PEOPLE OF the STATE OF CALIFORNIA ex rel. DEPARTMENT OF TRANSPORTATION, Plaintiff-Appellant,

v.

The UNITED STATES of America ex rel. Department of Transportation, Federal Highway Administration, Defendant-Appellee.

No. 75–1140.

United States Court of Appeals, Ninth Circuit.

Feb. 16, 1977.

O. J. Solander, argued, Harry S. Fenton, Sacramento, Cal., for plaintiff-appellant.

Dwayne Keyes, U. S. Atty. Sacramento, Cal., Morton Hollander, Karen K. Siegel, argued, Department of Justice, Washington, D. C., David S. Teske, Jack C. Wong, Asst. U. S. Atty., Portland, Ore., for defendant-appellee.

Before BROWNING and CHOY, Circuit Judges, and GRAY,* District Judge.

## SUPERSEDING OPINION

The per curiam opinion filed September 30, 1976, is withdrawn and the following substituted therefor:

---

* The Honorable William P. Gray, United States District Judge for the Central District of California, sitting by designation.

1. The Federal-Aid Highway Act was originally administered by the Department of Commerce. When the Department of Transportation was created in 1966, the functions, powers, and duties of the Secretary of Commerce under the

---

This is an appeal from a district court order granting Appellee's motion for summary judgment. We affirm.

Pursuant to the provisions of the Federal-Aid Highway Act (23 U.S.C. § 101, et seq.), the United States and the State of California undertook mutual responsibility for the construction and financing of Interstate Highway 5 in San Diego County, California. The statute obligates the United States to pay 90 percent "of the total cost thereof" (23 U.S.C. § 120(c)), and it is clear that cost of construction includes the cost of right-of-way acquisition (23 U.S.C. § 101(a)).

The question before us is whether these statutory provisions are in conflict with, and thus must be held to nullify, a directive of the Federal Highway Administration which provides, in effect, that federal funds will not be used to pay interest on any portion of a condemnation award or settlement for more than thirty days after such money is deposited with the court. Policy and Procedure Memorandum 80–4, ¶ 3i.[1]

In the present instance, and pursuant to California law, the State paid interest on the amount of the fund deposited until such fund was actually accepted by the land owner, 414 days after it had become available to him, and the Federal Government, pursuant to Policy And Procedure Memorandum 80–4, ¶ 3i, reimbursed the State only for the first thirty days.

The Government contends that the Policy and Procedure Memorandum under which the challenged action was taken was given legislative sanction by 23 U.S.C. § 315, which specifically authorizes the Secretary "to prescribe and promulgate all needful rules and regulations for the carrying out of the provisions of this title [Highways]."

It is not clear whether or not the Policy and Procedure Memoranda (PPM's) rise to the status of regulations, and we are not certain as to the full legal effect to which they are entitled.[2] Regulations of the De-

---

Act were transferred to the Secretary of Transportation. 49 U.S.C. § 1655(a)(1).

2. In *Lathan v. Brinegar*, 506 F.2d 677, 682 n. 6 (9th Cir. 1974), this court noted the Department of Transportation's own ruling that the Federal Highway Administration's memoranda did not rise to the status of regulations, quoting from 23 C.F.R. 1.32(a) (1973): "No such di-

partment of Transportation provide that the Federal Highway Administrator "shall promulgate and require the observance of policies and procedures . . . for carrying out the provisions and purposes of Federal laws, the policies of the Federal Highway Administration, and the regulations of this part." 23 C.F.R. 1.32(a). Although neither the record in this case nor the Government's brief reveals the precise authority for the PPM's, we infer them to be based upon this regulation.

In its petition for rehearing, the State makes a big point of its contention that PPM 80–4, ¶ 3i is not a regulation. However, in its original brief, it took the position that it is not material whether the challenged administrative provision is a regulation or an "interpretive rule," because it is "contradictory of the plain meaning of an unambiguous statute, is an attempt at legislation and has no legal effect." (See, Appellant's opening brief, page 10). The State's position is that "total cost" (as used in § 120(c)) has a plain meaning and that inasmuch as interest on the purchase price of an acquired right-of-way is part of the total cost thereof, the Federal Government is obliged to ignore the above-mentioned directive as being contrary to the statute and absorb 90 percent of the interest so paid. The trial court disagreed, and so do we.

The interpretation sought by the State would prevent the Secretary (now the Secretary of Transportation) from making any evaluation as to the reasonableness of the costs of construction or from promulgating regulations reasonably designed to limit such costs. Certainly, Congress must have intended that the statutory obligation to pay 90 percent of the total cost must include some corresponding right to impose reasonable limitations upon such costs, rather than to leave the Federal Treasury at the mercy of unfettered discretion by the State as to what expenditures may be made and

charged accordingly. We believe that the challenged PPM, whether it be designated a regulation or an interpretive rule, is reasonably adapted to the administration of the Act and in harmony with the statutory provisions thereof upon which the State relies.

An additional basis for our conclusion that the subject memorandum is in accord with the Act is contained in § 108(a). That provision expresses the purpose of "facilitating the acquisition of rights-of-way . . . in the most expeditious and economical manner" and in order to carry out such purpose it authorizes the expenditure of funds "for acquisition of rights-of-way . . . in anticipation of construction and under such rules and regulations as the Secretary may prescribe." The Department of Transportation might well conclude that rights-of-way could be acquired more economically and expeditiously if the land owners were encouraged to draw down the deposited funds as soon as they were available, and the administrative policy limiting the interest payment to thirty days is reasonably designed to provide such encouragement.

When confronted with a problem similar to ours, in the context of giving effect to the Equal Employment Opportunity Commission's Guidelines on Employee Selection Procedures, the Supreme Court said:

[They] are not administrative "regulations" promulgated pursuant to formal procedures established by the Congress. But, as this Court has heretofore noted, they do constitute "[t]he administrative interpretation of the Act by the enforcing agency," and consequently they are "entitled to great deference." *Griggs v. Duke Power Co.*, 401 U.S. 424, at 433–434, 91 S.Ct. 849, 28 L.Ed.2d 158. See also *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 94, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973).

rection, policy, rule, procedure, or interpretation contained in a Federal Highway Administration order or memorandum shall be considered a regulation or create any right or privilege not specifically stated therein." This lan-

guage, however, has been deleted in the 1976 revision of 23 C.F.R. 1.32(a). Because it is not apparent what effect the Department of Transportation intended this deletion to have, the issue is clouded even further.

*Albermarle Paper Co. v. Moody,* 422 U.S. 405, 431, 95 S.Ct. 2362, 2378, 45 L.Ed.2d 280 (1975). Having found that the PPM at issue in the present case is consistent with the purposes and policies of the Federal-Aid Highway Act, we defer to the interpretation adopted by the Department.

The judgment of the district court is affirmed.