PEOPLE of the STATE OF CALIFORNIA ex rel. DEPARTMENT OF TRANSPORTATION, Plaintiff-Appellant,

v.

U. S. of America ex rel. DEPARTMENT OF TRANSPORTATION, FEDERAL HIGHWAY ADMINISTRATION, Defendant-Appellee.

No. 75–2284.

United States Court of Appeals, Ninth Circuit.

June 22, 1977.

O. J. Solander, Dept. of Transp., Sacramento, Cal., argued for plaintiff-appellant.

Karen K. Siegel, William Kanter, Leonard Schaitman, Appellate Section Çiv. Div., U. S. Dept. of Justice, Washington, D. C., argued for defendant-appellee.

Before WALLACE and SNEED, Circuit Judges, and ZIRPOLI,* District Judge.

WALLACE, Circuit Judge:

The State of California sued the United States for reimbursement of interest paid in obtaining a voluntary right of entry for the construction of a pòrtion of Interstate Highway 5. The district judge granted summary judgment to the United States on the ground that the provisions of Policy and Procedure Memorandum (PPM) 80–4, ¶ 3i, a Federal Highway Administration directive,[1] apply to limit the amount of interest which the United States is legally obligated to pay. We affirm.

## I.

Pursuant to the provisions of the Federal-Aid Highways Act, 23 U.S.C. §§ 101 et seq., representatives of the federal government and the State of California entered into an agreement for the construction of a portion of Interstate 5 in Siskiyou County, California. As contemplated by the Act, the federal government agreed to pay 90% of the total cost of the project and the State agreed to undertake the actual construction, subject to the approval of the Secretary of Transportation. In connection with the construction of the highway, the State took steps to acquire the necessary right-of-way, including the parcel of land giving rise to this dispute.

■ Under California law, a condemnor may obtain from a landowner a voluntary right of entry upon land sought to be condemned prior to the actual condemnation, with interest based upon the final sales price accruing to the landowner from the date the condemnor makes his entry and takes possession of the property. *People ex rel. Dept. of Public Works v. Williams,* 30 Cal.App.3d 980, 106 Cal.Rptr. 795 (1973); Cal.Code Civ.Pro. § 1268.310. Interest continues to accrue by law until full payment

---

* Honorable Alfonso J. Zirpoli, United States District Judge, Northern District of California, sitting by designation.

1. Policy and Procedure Memorandum 80–4 was originally issued by the Bureau of Public Roads, Department of Commerce, to provide operating procedures and policy in carrying out the Federal-Aid Highways Act. However, when the Department of Transportation was created in 1966, the functions, powers, and duties of the Secretary of Commerce under the Act were transferred to the Secretary of Transportation. 49 U.S.C. § 1655(a)(1). PPM 80–4 is now a directive of the Federal Highway Administration, Department of Transportation. *See California ex rel. Dept. of Transportation v. United States ex rel. Dept. of Transportation, Federal Highway Administration,* 547 F.2d 1388, 1389, n. 1.

is made to the landowner. Cal.Code Civ. Pro. § 1268.320. With respect to the parcel involved in this case, the State obtained a voluntary right of entry and took possession on August 1, 1968. Pursuant to the agreement with the landowner and certain California statutes,[2] interest accrued at 7% annually from that date until October 15, 1968, when the property was formally acquired by sale. As ultimately calculated, interest for this entire period was $1,169.01. The United States reimbursed the State in the amount of $467.69, representing 90% of the interest for the first 30 days, but refused to participate in any further interest payment.

After exhausting its administrative remedies, California brought suit under the Tucker Act, 28 U.S.C. § 1346(a)(2), to recover $642.34, representing 90% of the interest for the remainder of the period before the sale was consummated. The district judge, granting the motion of the United States for summary judgment, found that the provisions of PPM 80–4, ¶ 3i,[3] "which limits payments for interest under the Federal Aid Highway Act to a period of thirty (30) days after the date payment is made available to the landowner, apply to situations in which plaintiff has taken a voluntary right of entry on a negotiated basis . . . ."

Accordingly, the court held that the State was entitled to no further reimbursement.

## II.

Our task on appeal is to determine whether the district judge was correct in granting summary judgment. There are two issues involved in the court's decision: the validity of PPM 80–4, ¶ 3i and the applicability of this section to voluntary rights of entry.

We resolved the first issue in *California ex rel. Dept. of Transportation v. United States ex rel. Dept. of Transportation, Federal Highway Administration,* 547 F.2d 1388 (9th Cir., 1977), where we held that PPM 80–4, ¶ 3i is consistent with the purposes and policies of the Federal-Aid Highways Act. Accordingly, the only issue remaining in this case is whether this directive can be interpreted as applicable to voluntary rights of entry.

In this case, the Federal Highway Administration has interpreted its policy pertaining to interest payments in excess of 30 days, i. e., PPM 80–4, ¶ 3i, as being applicable to rights of entry.[4] While not dealing with a rule, the Supreme Court has held that an interpretation of a regulation

---

**2.** At the time of the events with which this case is concerned Cal.Code Civ.Pro. § 1255b, the predecessor of Cal.Code Civ.Pro. §§ 1268.310 and 1268.320, was in effect. Cal.Code Civ.Pro. § 1255b was repealed effective July 1, 1976.

**3.** PPM 80–4, ⌐ 3i states as follows:
   i. Federal funds will not participate in any interest payments on the portion of the final settlement or award represented by such partial payment, after the date payment is made available to the property owner with the following exception. Federal participation may be allowed in interest payments for a period of not to exceed 30 days where due to court procedures the deposit cannot be made available to the property owner immediately upon condemnation. Under such circumstances physical possession must not be taken until the deposit is available to the property owner.

**4.** By affidavit dated March 3, 1975, W. B. Sanborn, the administration manager of the California Division Office, Federal Highway Administration, stated "that the policy of the Federal Highway Administration pertaining to interest payments in excess of 30 days," i. e., PPM 80–4, ⌐ 3i, "is considered to be applicable to Rights-of-Entry . . . ." California asserts that there are questions of fact concerning this matter, including a question concerning the credibility of the United States' position. California, however, submitted no affidavit setting forth "specific facts showing that there is a genuine issue" concerning the policy of the Federal Highway Administration. Fed.R.Civ.P. Rule 56(e). Nor does the record indicate that California sought a continuance or denial of summary judgment on the basis that discovery would disclose specific facts creating a genuine issue. *See* Fed.R.Civ.P. Rule 56(f). Thus we consider that the position of the Federal Highway Administration is uncontroverted. Conclusory allegations, unsupported by factual data, do not create a triable issue of fact. *Berkelman v. San Francisco Unified School District,* 501 F.2d 1264, 1267 (9th Cir. 1974); *Bridges v. Internal Revenue Service,* 433 F.2d 299, 300 (5th Cir. 1970); *Morgan v. Willingham,* 424 F.2d 200, 202 (10th Cir. 1970).

by the issuing agency is entitled to great deference:

> Since this involves an interpretation of an administrative regulation a court must necessarily look to the administrative construction of the regulation if the meaning of the words used is in doubt. . . . [T]he ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation.

*Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 413–14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); *accord, Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). *See also Northern Indiana Public Service Co. v. Porter County Chapter of the Izaak Walton League, Inc.,* 423 U.S. 12, 15, 96 S.Ct. 172, 46 L.Ed.2d 156 (1975). Although the PPM may be an interpretative rule rather than a formal regulation, *see California ex rel. Dept. of Transportation v. United States ex rel. Dept. of Transportation, Federal Highway Administration, supra,* 547 F.2d at 1389–1390; *Lathan v. Brinegar,* 506 F.2d 677, 682 n. 6 (9th Cir. 1974) (en banc), administrative construction provides the best indication of the issuing agency's intent in either case.[5] Thus the same deference in interpretation is appropriate whether the PPM is a formal regulation or an interpretative rule. Accordingly, the issue before us is whether the Federal Highway Administration's interpretation of PPM 80–4, ¶ 3i as applicable to rights of entry is plainly erroneous or inconsistent with the memorandum.

California contends that the Federal Highway Administration's interpretation is inconsistent with the memorandum in two ways. First, it argues that the term "settlement" within paragraph 3i[6] is usually understood in the context of litigation and hence does not refer to a settlement negotiated without the filing of a lawsuit. Upon an examination of the language of the memorandum as a whole, we find this to be too narrow a reading. First, PPM 80–4, by its title, deals with "Right-of-Way Procedures (Negotiations)." Thus it is clear from the title that the memorandum specifically contemplates the acquisition of a right-of-way through negotiation. Moreover, the memorandum itself speaks of "settlements" reached through both "condemnation procedures" and "negotiation."[7] Accordingly, the term "settlement," when referring to the acquisition of right-of-way, is not restricted to usage involving litigation. "Settlement" may also refer to a settlement such as the one negotiated in this case.

Second, California argues that PPM 80–4, ¶ 3i applies by its terms to circumstances where a partial payment is made. Because there was no evidence of partial payment here, the State contends that the interest limitation should not apply. We do not agree that the memorandum is so limited.

Paragraph 3i of PPM 80–4 presupposes partial payment because, within the framework of the memorandum as a whole, an interest limitation clause normally will be required only where such payment is involved. The PPM contemplates a partial payment to the property owner of at least

---

5. This does not foreclose, of course, an inquiry into the legality of the regulation or rule. *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945).

6. Paragraph 3i states in part:
   Federal funds will not participate in any interest payments on the portion of the final *settlement* or award represented by such partial payment, . . . .
   (Emphasis added).

7. Paragraph 3e of the memorandum provides that if federal participation is requested in the cost of a parcel of land, a deposit of 75% of fair market value must be made available to the landowner before the State takes possession of

the property. It also provides that "[f]or *negotiated settlements* this would require the establishment of administrative procedures that will enable the State to tender the check or warrant covering the partial or full payment to the owner at or before the time the State takes physical possession." (Emphasis added.)

Paragraph 3c provides that the property owner is entitled to a written explanation of his right to partial payment prior to vacating his property "both in the event *settlement is reached through negotiation* and in the event settlement is through condemnation procedures." (Emphasis added).

75% of the fair market value of the property before the State can take physical possession, unless the owner waives in writing his right to such payment.[8] Because partial payment normally is required in order for the condemning state to take possession, interest will accrue in ordinary circumstances only where the payment is deposited in an escrow or other account and a fund is thereby created. Thus the need for an interest limitation will usually arise where a partial payment is involved.

Nevertheless, where the state takes possession without payment and, pursuant to state law, interest accrues without creation of a fund, the basic policy of limiting interest payments remains in effect. Whether or not there is a partial payment, if delay permits the accrual of interest, the absence of limitations on interest payments may discourage the expeditious and economical acquisition of rights-of-way by the states.[9] *Cf. California ex rel. Dept. of Transportation v. United States ex rel. Dept. of Transportation, Federal Highway Administration, supra,* 547 F.2d at 1390. Thus reading PPM 80–4 as a whole, we interpret "partial payment" as merely indicative of the normal situation where interest accrues and not a prerequisite for application of paragraph 3i.

The Federal Highway Administration interprets PPM 80–4, ¶ 3i as applicable to rights of entry. We find that this is neither plainly erroneous nor inconsistent with the memorandum. Thus the administrative interpretation is controlling in this case.

■ Summary judgment is proper where there is no genuine issue of material fact and the moving party is clearly entitled to prevail as a matter of law. *Zweig v.*

*Hearst Corp.,* 521 F.2d 1129, 1134 (9th Cir.), *cert. denied,* 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975); *see Caplan v. Roberts,* 506 F.2d 1039, 1042 (9th Cir. 1974); *Stansifer v. Chrysler Motors Corp.,* 487 F.2d 59, 63 (9th Cir. 1973). This case turns solely on what interpretation is given to PPM 80–4, ¶ 3i. Here, interpretation involves only questions of law; there are no triable issues of fact. The district judge properly determined that under the provisions of PPM 80–4, ¶ 3i the United States had no legal obligation to reimburse California for interest paid beyond the first 30 days. Thus, the United States was entitled to prevail as a matter of law and the district judge was correct in granting summary judgment.

AFFIRMED.

---

8. Paragraph 3e provides that a deposit must be made available to the landowner before the State takes physical possession. *See* n.7 *supra.*

Paragraph 3g, however, provides that the property owner "may voluntarily give up possession of his property before payment provided he has been informed in writing of his rights to such payment prior to vacation and executes an instrument giving the State an earlier right of entry."

9. In the Federal-Aid Highways Act, 23 U.S.C. §§ 101 *et seq.,* Congress, "for the purpose of facilitating the acquisition of rights-of-way . . . in the most expeditious and economical manner," authorized the Secretary of the Treasury to make the funds apportioned to the states available for acquisition of rights-of-way under appropriate rules and regulations. 23 U.S.C. § 108(a). Thus our interpretation is consistent with the congressional policy that rights-of-way should be acquired "in the most expeditious and economical manner".