**Serena M. FLEISCHHAKER, Plaintiff,**

v.

**Brock ADAMS, Defendant.**

**Civ. A. No. 76–0949.**

United States District Court,
District of Columbia.

Aug. 27, 1979.

Rufus G. King, III, Washington, D.C., for plaintiff.

Elizabeth L. Newman, U. S. Civil Service Commission, Washington, D.C., Florence Abrams, Asst. U. S. Atty., Washington, D.C., for defendent.

OBERDORFER, District Judge.

### MEMORANDUM

This is an employment discrimination case brought under title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16 (1976), in which plaintiff alleges discrimination on the basis of sex. Prior to her retirement on July 31, 1975, plaintiff Serena M. Fleischhaker was a Visual Information Specialist (VIS) at the GS–11 level with the Analysis & Supply Branch, Programs Management Staff, Systems Research & Development Service (SRDS) of the Federal Aviation Agency (FAA). Plaintiff seeks a retroactive promotion to the GS–15 level, attorneys' fees and costs and other injunctive and declaratory relief. The case is now before the Court on defendant's motion for summary judgment.

In its Memorandum and Order of July 25, 1978, the Court granted defendant's motion to dismiss as to events which occurred prior to June 24, 1972, the date when the amendments to title VII on which plaintiff based her case were enacted. The Court concluded that the case did not involve continuous discrimination, but only discrete instances of allegedly discriminatory actions. As to events after June 24, 1972 but before May 11, 1975, the date of the earliest allegedly discriminatory action which had been accepted by the FAA for processing through its administrative procedures, the Court reserved judgment, finding unresolved one issue: whether the 1972–75 events could be

actionable because plaintiff did not know the time limitation of 30 days imposed by 5 C.F.R. § 713.214(a)(1)(i) prior to her contact with an employment opportunity counselor in June 1975. If so, the time limitation would be waived under Civil Service regulations which require an extension of such limits where

> the complainant shows that he was not notified of the time limits and was not otherwise aware of them . . ..

5 C.F.R. § 713.214(a)(4)(ii).

In addition to the issue of plaintiff's notice about the time limitation, three issues, which had been considered in the administrative process, were found to survive the motion to dismiss; Memorandum and Order of July 25, 1978, 8–11:

> (2) whether the fact that plaintiff was rated in oral communication skill was discriminatory, i. e., whether similarly situated males were evaluated on that skill and by the same criteria;

> (3) whether defendant acted in a discriminatory fashion by delaying the grant of a reward to plaintiff;

> (4) whether defendant discriminated against plaintiff in failing to promote her to the GS–12 level. Arguably subsumed within this last issue was the question of whether a failure to promote might have resulted from a denial to plaintiff of opportunities to perform work for which she was qualified and which would have warranted a GS–12 rating.[1]

Based on the affidavits, exhibits and other evidence in the record, including the admissions of the parties, and after oral argument, the Court holds that there is no genuine issue of fact as to any of the above questions which survived the motion to dismiss. The undisputed material facts warrant the entry of summary judgment for defendant. The following findings of fact and conclusions of law support that holding.

FINDINGS OF FACT

1. Plaintiff was subject to a classification audit on June 18, 1974; the audit classified her as a GS–11 Visual Information Specialist. Statement of Material Facts as to Which Defendant Contends There Is No Genuine Issue, filed November 27, 1979, para. 3.

2. Plaintiff received a memorandum setting out the results of her audit no later than July, 1974; Answers to Defendant's Second Set of Interrogatories, A.5(c).

3. Plaintiff never appealed this audit pursuant to FAA regulations; para. 25, Amended Complaint of Answers to Defendant's First Set of Interrogatories, 32(c).

4. Plaintiff first contacted an Equal Employment Opportunity (EEO) counselor in June 1975; Amended Complaint of January 9, 1978, para. 15.

5. After efforts to resolve plaintiff's complaint proved fruitless, plaintiff filed a formal complaint of sex discrimination on September 8, 1975. By letter of October 21, 1975, plaintiff was informed that the following allegations had been accepted for investigation:

> The allegation that you were discriminated against because of your sex when your May 1975 [Performance Evaluation Record] was rated in Part IV, Skill in Oral Communication; when you did not receive an award for the quality and quantity of work completed during FY 75; and when you were not promoted to the GS–12 level due to your level of work performance during the past year.

Defendant's Exhibit IX.

6. Plaintiff appealed the decision to reject portions of the complaint to the Civil Service Appeals Review Board. The Board sustained the rejection on April 29, 1976; Defendant's Exhibit X.

7. Beginning in 1972, all FAA employees in both the 800 Independence Avenue and the Trans Point locations were furnished with copies of FAA Order 3300.19 dealing with EEO counseling. The order was also posted in prominent places throughout both locations; Affidavit of Barbara A. Hinton.

8. FAA Order 3300.19 included notice that a discrimination complaint had to be

---

1. *See* this Court's Memorandum and Order of July 25, 1978, at 10–11; fn. 3, *infra*.

brought to the attention of an EEO counselor within 30 days of the alleged act of discrimination; *id.*

9. Beginning in 1972, posters were prominently displayed on each floor of both buildings, informing employees of this 30-day requirement for discrimination complaints; *id.*

10. The present posters, measuring about 3 feet by 1.5 feet, contain essentially the same legend as the posters originally displayed in 1972; *id.*

11. The present posters contain the following legend:

Public laws 92–261 and 93–259 prohibit discrimination against Federal employees and applicants for Federal employment on the basis of race, color, religion, sex, national origin, or age. If you feel that you have been discriminated against, contact any of the counselors listed below within 30 calendar days of the alleged discriminatory act.

*Id.*

12. FAA Order 3300.19 was replaced by order WA 3800.1 on April 12, 1976. That order also contains the instruction that contact with an EEO counselor must be made within 30 days of the act of alleged discrimination; *id.*

13. While complaints of discrimination must be filed within 30 days after the alleged incident of discrimination, appeal from an audit decision may be taken at any time.

14. The classification report plaintiff received referred her to provisions of an agency handbook setting forth her appeal rights, and advised her that her appeal rights were contained therein. The handbook made it clear that there is no time limit for appealing a classification decision; Memorandum of June 18, 1979 last ¶, Defendant's Exhibit (A); Memorandum in Support of Defendant's Motion for Summary Judgment, filed November 27, 1979, at 10.

15. Plaintiff alleges that she was misinformed about the appeal from her classification audit. In responding to interrogatories, plaintiff alleged that Carol Arnold, in her capacity as Chief of the Labor Relations Division of defendant FAA informed her that she could not appeal the audit decision; Defendant's Interrogatories I, 32(b); Defendant's Interrogatories II, 2B(f). After deposing Ms. Arnold and learning that she was not in that position at the time in question, plaintiff now alleges that an unnamed "appropriate classification officer" misinformed her; Plaintiff's Opposition to Defendant's Motion for Summary Judgment, filed December 15, 1978, at 3.

16. In her Opposition to Defendant's Motion to Dismiss and for Summary Judgment (filed June 21, 1978), plaintiff states:

Throughout the period of Plaintiff's employment, she was discouraged from initiating a discrimination complaint because of her own fear of consequences.

*See also* Amended Complaint, filed January 9, 1978, ¶ 41.

In her administrative complaint, however, plaintiff states:

. . . even when they were available I did not take advantage of them [referring to EEO procedures] I enjoyed my work and although I should have taken advantage of these opportunities I was devoted to my position and worked hard and diligently at it not taking the time needed to follow such action.

Defendant's Exhibit 1.

17. The position classification standard for plaintiff's job reveals that effective oral communication was crucial to the performance of the Visual Information Specialist position at the GS–11 level; Defendant's Exhibit A at 19, 21, and 22 (filed February 16, 1978). *See* Findings of Fact 27.

18. Six male VIS's at the FAA were rated on their oral communication skills from June 30, 1974 through July 31, 1975; Defendant's Exhibit IV.

19. Plaintiff does not challenge the overall rating of satisfactory she received.

20. Plaintiff received two letters of appreciation, dated June 19, 1975 and July 18, 1975, Defendant's Exhibits V(A) and V(B).

21. Plaintiff's Special Achievement award was recommended by her supervisor, Mr. Graham, on July 31, 1975; Defendant's Exhibit VI.

22. Plaintiff's supervisor was not interviewed by the EEO counselor or told the content of plaintiff's complaint until August 21, 1975. Statement of Material Facts As To Which Defendant Contends There is No Dispute, filed November 27, 1978, para. 13.

23. Plaintiff received her award on August 7, 1975; she received the maximum award possible based on her letters of appreciation; Defendant's Exhibit VII; Transcript of Summary Judgment arguments at 13 (admissions of both parties).

24. In her administrative complaint, plaintiff states that her function as a "program manager" coupled with other additional responsibilities rated a grade higher than GS–11, Defendant's Exhibit I, p. 5.

25. In her administrative complaint, plaintiff listed various responsibilities which she performed which had allegedly not been included in her position description, id. at 6. See also Answers to Defendant's Second Interrogatories, 3, which details the responsibilities which plaintiff alleged made her entitled to a GS–12 rating.

26. Plaintiff alleges that the auditor misconstrued her duties and the applicable Civil Service standards; she notes that she was in severe pain and was heavily medicated at the time of the audit; Amended Complaint, filed January 9, 1978; Answer to Defendant's First Set of Interrogatories, 32; Answer to Defendant's Second Set of Interrogatories, A.2(b)(e), (f).

27. The United States Civil Service Commission Position Classification Standards for the GS–11 Visual Information Specialist (Exhibits) read in part:

*Level of Responsibility*

While GS–11 employees usually work from ideas and suggestions developed by the program officials involved or by their supervisors, they are responsible for translating these ideas and suggestions (which may be in the form of notes or rough sketches) into the detailed plans from which the exhibit will be constructed. They consult with program officials in selecting the visual materials that will be, in their judgment, most suitable for carrying out the objectives of the exhibit, and discuss with their supervisors and the program officials modifications and changes in the original ideas that appear to them to be warranted, either in terms of costs, available material, or information objectives. Usually, GS–11 employees are responsible for making the initial decisions about color schemes, lighting, size and placement of material in order to achieve the objectives that have already been decided upon. This responsibility differs from the responsibility characteristics of GS–9 employees who, when working on the same kind of projects, typically work from fairly detailed drawings or notes.

Defendant's Exhibit A to Motion to Dismiss or For Summary Judgment, filed February 16, 1978, at 21.

28. The United States Civil Service Commission Position Classification Standards for the GS–12 Visual Information Specialist (Exhibits) read in part:

*Level of Responsibility*

Visual Information Specialists (Exhibits) GS–12 are responsible for conceiving and planning the details of the visual presentation to be embodied in the exhibit. Typically, they discuss with their clients the theme and purpose of the exhibit, the audience for which it is intended, the circumstances under which it is to be viewed, and the information which it is intended to convey. The GS–12 employees are then responsible for conceiving the visual presentation of the theme and planning the techniques and construction methods that will be most effective in terms of the information objective to be achieved. They consult with the program officials and subject-matter specialist involved in order to be presented in exhibit form. They develop a plan for the presentation of the information and obtain the approval of the content and approach

from their superiors and program officials. GS–12 employees are responsible for translating this plan into the exhibit itself. They work closely with illustrators, artists, photographers, model makers and other craftsmen in the development of the necessary visual material and are responsible for accepting or rejecting the final product. As distinguished from this level of responsibility, GS–11 employees typically work on the basis of specific suggestions and ideas of how an exhibit should be developed, the GS–11 employee, when working on projects discussed at this level, is responsible for working out the details of translating ideas for an exhibit into final form rather than conceiving and developing the visual presentation of the theme.

*Id.* at 26–27.

29. In this action, plaintiff alleges that she was discriminatorily denied the opportunity to do work and to be promoted to levels available to men of comparable education and experience; Plaintiff's Statement of Genuine Issues, filed December 15, 1978, at 24.

30. Plaintiff occupied the only Visual Information Specialist position with the SRDS; thus she was not on a "career ladder" and could not be promoted noncompetitively by the defendant. Memorandum in Support of Defendant's Motion for Summary Judgment, filed November 27, 1978, at 14; Opposition to Defendant's Motion for Summary Judgment, filed December 15, 1978, at 2.

31. Plaintiff never applied for any GS–12 vacancies, and never sought transfer to the Central Graphics Department Office, where promotion to the GS–12 level would have been possible for qualified candidates. Memorandum in Opposition to Defendant's Motion for Summary Judgment, filed December 15, 1978, at 2.

32. The only other means by which plaintiff could have attained GS–12 status in the position she occupied was to have a desk audit conducted and a finding made that she was in fact doing GS–12 work. Memorandum in Support of Defendant's

Motion for Summary Judgment, filed November 27, 1978, at 14.

33. Plaintiff sought a classification audit and was given one on June 18, 1974; she was found to be doing GS–11 work. Statement of Material Facts as to Which Defendant Contends There Is No Genuine Issue, filed November 27, 1979, para. 3.

34. Defendant's Interrogatory 24, Defendant's First Set of Interrogatories, asked plaintiff to explain why she did not file a grievance for any incident of alleged discrimination she perceived. Her response was that

The kind of discrimination to which women were submitted during most of my working life was first, so subtle as to be unnoticed and secondly, if perceived, was accepted as the normal state. When the consciousness of women became aroused in later years, and especially after the passage of the 1972 Equal Employment Opportunities Act, giving federal employees greater access to remedial procedures, women employees of the government began to examine their positions more critically and to speak out.

There was still a residue of uncertainty and fear, however. Even after I became aware of my disadvantaged status as a woman at the FAA, I hesitated to act because of the example of other women who were harassed and forced to quit work after submitting complaints of discrimination. This fear was substantiated by what occurred after I determined to act in my own case of the prejudicial Personnel Evaluation Record of May 1975. When I told my supervisor of my intention of seeking the advice of an EEO Counselor, he warned me that the agency might retaliate against me for raising the issue.

35. Plaintiff has proffered no evidence of actual reprisal in this case.

36. Plaintiff has offered statistical evidence allegedly demonstrating that male employees frequently outranked and far outnumbered female employees at the FAA, and that this was due to widespread

sex discrimination by the FAA. *See* Plaintiff's Exhibit 4.

CONCLUSIONS OF LAW

■ 1. Plaintiff knew or should have known of the time limitation for filing a discrimination complaint; she is not entitled to take advantage of the time extension permitted by 5 C.F.R. § 713.-214(a)(4)(ii). Undisputed facts as to notices provided FAA employees and posters displayed, Findings of Fact 7–12, together with plaintiff's admissions as to her awareness of the complaint procedure, *see* Findings of Fact 16, make it clear that she either knew or should have known of the 30–day requirement.

■ 2. Plaintiff has not made a sufficient proffer of evidence to create a genuine issue as to whether she was dissuaded from filing complaints because of threats of reprisal or other acts of intimidation. Such allegations, if substantiated, could serve to toll the 30-day notice provision of 5 C.F.R. § 713.214(a)(1) and allow the Court to take cognizance of an action that would otherwise be barred. A mere subjective fear of reprisal or feeling of intimidation, however, cannot be sufficient to toll the thirty-day period: there must be some clear objective basis for the complainant to have felt intimidated, threatened, or otherwise dissuaded from asserting her rights. Plaintiff in this case, with one exception, has proffered no such objective evidence. She has suffered no reprisal nor been personally threatened with any. She has not made·any showing of actual reprisals against other women at the FAA, much less actually demonstrated that she had knowledge of such incidents at the time in question and that they caused her to refrain from initiating complaints. The only tangible evidence plaintiff has offered to support her allegations of an atmosphere of intimidation is her own assertion, in a response to an interrogatory, that her supervisor warned her that the agency might retaliate against her if she saw an EEO counselor. Findings of Fact 34. However, plaintiff's own account of this incident establishes beyond material dispute that the statement had no intimidating effect: she was not dissuaded or deterred from pursuing an interview with the counselor, but, as events bore out, stuck by her "determin[ation]".

■ 3. The undisputed evidence reveals that oral skills were a key part of plaintiff's job and that males in the Visual Information Systems category at the FAA were rated on that skill in 1974 and 1975 audits. Findings of Fact 17, 18, and 27. The Court concludes based on the facts as to those men's positions that they were "similarly situated" for the relevant purposes of such a comparison. In any event, plaintiff has failed to proffer any evidence that any of the 15 VIS's in the Department of Transportation but outside the FAA were not rated on oral skills in audits conducted during the relevant period. Plaintiff has failed to proffer any evidence that her being rated for such skill was discriminatory.

■ 4. Plaintiff fails to proffer any evidence to raise an issue of fact as to whether her award was delayed because of her discrimination suit, or even whether it was delayed at all. Findings of Fact 20–23. She also fails to proffer any evidence to raise an issue as to whether she received the award as a palliative because of her claims, even assuming that this would constitute a cause of action if demonstrated. *Id.* The Court concludes that there is nothing actionable in the granting or the timing of the award. ·

■ 5. To the extent that plaintiff alleges that the 1974 audit was discriminatory, her failure to pursue such a claim through the established administrative procedures would normally bar further inquiry here. Plaintiff alleges, however, that she failed to appeal the audit because she was misled by agency officials into believing that her appeal rights had expired after 30 days. Findings of Fact 13, 15. Such allegations, if true, could justify the Court in exercising its discretion and allowing plaintiff to maintain her action, rather than relegating her to initiating an administrative appeal five years after the decision in question. Plaintiff's attempts to substanti-

ate these allegations, however, have revealed fatal inconsistencies in her story and have shown her to be an undeserving candidate for such an equitable waiver. Findings of Fact 15. Based on these considerations and the fact that the report informing her of the audit results specifically referred her to agency handbook provisions making it clear that no time limit applied to appeals from audit decisions, Findings of Fact 14, the Court concludes that no substantial issue of deception is presented and that this aspect of plaintiff's suit is barred by her failure to exhaust her administrative remedies.

Even if the Court were to reach the issue of the 1974 audit, however, it is questionable whether plaintiff could prevail on any part of her complaint, for she fails to allege any definable acts of sex discrimination. Her complaint states merely that the auditor misconstrued her duties and the applicable Civil Service standards and failed to consider that plaintiff had been in severe pain and under heavy medication at the time of the audit. Findings of Fact 26. Although such actions could conceivably be motivated by a discriminatory animus, plaintiff has failed to allege that the auditor was so motivated or to proffer sufficient evidence to raise a genuine issue about·it; even her own affidavit is silent on this.

■ 6. Plaintiff has failed to create a genuine issue of fact as to whether defendant discriminated against her by failing to promote her to the GS–12 level. The principles underlying the prima facie case and the elements to be established in making out a prima facie case of racially discriminatory hiring were set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and refined in *Furnco Construction Co. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978), and *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978) (per curiam). The relevance of these cases for the instant action, in its present posture, was recognized by our Court of Appeals in

*Hackley , v. Roudebush*, 171 U.S.App.D.C. 376, 520 F.2d 108 (D.C. Cir. 1975):

> [I]n analyzing whether a case is meet for summary judgment, the relevant legal standards under Title VII must be recalled; such standards will affect whether a disputed fact is indeed "material" with respect to resolving the case.

*Id.* 171 U.S.App.D.C. at 425, 520 F.2d at 157. The *Hackley* Court then cited prima facie case principles set forth in *McDonnell Douglas*.

In *McDonnell Douglas, supra,* the Court held that a plaintiff makes such a case by showing

> (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applications from persons of complainant's qualifications.

*Id.* at 802, 93 S.Ct. at 1824.

■ Plaintiff here fails to meet either the second or fourth of the *McDonnell Douglas* criteria: the undisputed evidence discloses that plaintiff failed to apply for a transfer to the only office where promotion was possible. Findings of Fact 30–32. Plaintiff's assertion that it would have been "useless" to apply for a transfer because there were only men in the office to which she would have sought transfer, Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment, at 2, is a legal *non sequitur.* Title VII provides no remedy to those who presume they will be discriminated against and therefore do not even bother to apply for a position. *McDonnell Douglas, supra.*

■ 7.· Plaintiff has not proffered any evidence to support her allegation that she was denied the opportunity to do work that would have entitled her to a GS–12 rating. Despite four amended complaints, two series of dispositive motions, responses to several sets of interrogatories, and considerable documentary discovery, she has failed to

establish a prima facie case of sex discrimination on the basis of denial of opportunities or to indicate any reasonable likelihood of doing so at trial. Plaintiff's allegations remain at the most general and abstract level; for example, in her Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment, plaintiff states at 2: "the denial to plaintiff of an opportunity to work at a level above the GS 11 level occurred where the preponderance of men over women at FAA was staggering . . ." Plaintiff has failed to proffer any evidence as to what opportunities for additional training and experience existed within the SRDS; she has failed to specify which of those opportunities she feels were denied her, and she has failed to proffer supporting evidence raising a genuine issue as to any denials.

Assuming, *arguendo*, that plaintiff has raised an issue with respect to whether a general pattern or practice of discrimination prevailed at FAA, Findings of Fact 36, and assuming that such a showing would be sufficient to raise an issue as to whether agency action in a particular case were motivated by a discriminatory animus, *cf. Keyes v. School Dist. No. 1*, 413 U.S. 189, 201–203, 93 S.Ct. 2686, 37 L.Ed.2d 548 (1973), plaintiff still must raise a material issue with respect to whether *she*, in particular, was denied some opportunity. This she has not done. No matter how pervasive the discrimination at FAA might have been, plaintiff cannot recover under Title VII unless she was herself a victim of that discrimination. The Court has seen no evidence of this.

It is well established that on a motion for summary judgment, the burden is on the movant to establish the absence of any material issue of fact. *See, e. g., Adickes v. Kress & Co.*, 398 U.S. 144, 153, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The movant must come forward with a proffer rebutting each particular allegation of the complaint in order to qualify for possible summary judgment; if the movant does so, the burden shifts to the other party to proffer evidence countering that of the movant and raising a material dispute as to some issue of fact. *See id.* at 157–60, 90 S.Ct. 1598; *Smith v. Saxbe*, 183 U.S.App. D.C. 210, 214, 562 F.2d 729, 733 (D.C. Cir. 1977). Yet where allegations are made with no particularity, but are only conclusory and unsubstantiated, summary judgment is appropriate.[2] In those circumstances, a general denial may suffice to shift the burden to the party opposing the motion to adduce sufficient evidence to create a genuine issue of fact. *See Young v. South Side Packing Co.*, 369 F.Supp. 59, 60 (E.D.Wis. 1973) (granting summary judgment to defendant in Title VII action based on holding that "conclusory allegations . . . are insufficient . . . when countered by a general denial . . . to constitute established fact"). In this case, there is no particular allegation of discriminatory denial of opportunity that defendant has failed to rebut, for the simple reason that there have been no particular allegations of such denials at all. Plaintiff thus bore the burden of adducing some evidence of denial of opportunities sufficient to raise a material issue of fact. This plaintiff failed to do.[3]

2. *See* Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits . . or otherwise . . . must set forth specific facts showing that there is a genuine issue for trial."); *People ex rel. Department of Transportation v. United States*, 561 F.2d 731, 733 n. 4 (9th Cir. 1977) ("Conclusory allegations, unsupported by factual data, do not create a triable issue of fact."); *Bryant v. Commonwealth of Kentucky*, 490 F.2d 1273, 1275 (6th Cir. 1974) ("Mere conclusory and unsupported allega-

tions, rooted in speculation do not meet [the opposing party's] burden.)

3. Even had plaintiff adduced some such evidence, however, those claims would probably be barred here as untimely, (*see* Conclusion of Law 1, *supra*): it would likely be difficult for plaintiff to establish that any claim of denial of opportunities had been within the fair intendment of her administrative complaint. *See* Complaint for Relief from Sex Discrimination Retroactively in Employment, filed May 20, 1976, ¶¶ 9, 10 (quoting the allegations in the administrative complaint). Not having any specific allegations before it, however, the

In light of the extensive proceedings in this action and the still woefully deficient state of plaintiff's proof,[4] the Court can only conclude that plaintiff has no case to make at all.

Court refrains from holding that as a matter of law no conceivable claim of denial of opportunity could be found to have been embodied by the language of the administrative complaint.

4. This case contrasts sharply with *Hackley v. Roudebush*, 171 U.S.App.D.C. 376, 520 F.2d 108 (D.C. Cir. 1975), which held inappropriate the trial court's grant of summary judgment for the defendants in a Title VII action. Central to the *Hackley* Court's holding was the fact that the District Court had denied plaintiff any opportunity for discovery, holding him limited to the administrative record. *See id.* 17 U.S.App. D.C. at 426, 427, 520 F.2d at 158–59. Here, by contrast, there has been complete and extensive discovery, extending over a period of more than two years. *See Schneider v. McKesson & Robbins, Inc.*, 254 F.2d 827, 831 (2d Cir. 1958) (opposing party cannot obtain denial of motion for summary judgment "on the basis of a hope that some evidence might develop at the trial"; failure to make full use of available discovery procedures is no excuse).