**Michael G. RADIN, Appellant,**

v.

**UNITED STATES of America and National Mediation Board, Appellees.**

No. 82–1456.

United States Court of Appeals, Fourth Circuit.

Submitted Dec. 2, 1982.

Decided Jan. 27, 1983.

Harry L. Gastley, Gabeler & Gastley, McLean, Va., on brief, for appellant.

Elsie L. Munsell, U.S. Atty., Nash W. Schott, Asst. U.S. Atty., Alexandria, Va., on brief, for appellees.

Before RUSSELL and PHILLIPS, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

JAMES DICKSON PHILLIPS, Circuit Judge:

Michael G. Radin appeals the dismissal of his action against the United States and the National Mediation Board for allegedly violating his fifth amendment right to due process. Radin, a railroad employee who was dismissed for violating the terms of a collective bargaining agreement, alleged that the defendants deprived him of his statutorily guaranteed right to notice and an opportunity to challenge his dismissal. The district court granted defendants' motion to dismiss, finding that the suit against the United States was barred by sovereign immunity and that the National Mediation Board was not a proper defendant in the action. We affirm.

I

Radin was hired by the Penn Central Transportation Company in 1974 as a police officer. He was a member of Teamster Local No. 732, which had a collective bargaining agreement with Penn Central. In January of 1976, Radin was accused of violating the collective bargaining agreement by submitting falsified overtime claims and failing to remit to Penn Central certain fees and mileage payments he had received for court appearances on behalf of his employer. Radin appeared at a hearing held in the Office of the Captain of Police, where he was represented by his union steward. After being found guilty as charged, Radin was dismissed on February 7, 1976.

Pursuant to the grievance procedure contained in the bargaining agreement, Radin appealed his dismissal to a Penn Central executive. On March 8, 1976, the dismissal was sustained and Radin, again through his union representative, appealed the decision to a regional board of adjustment.[1] He requested a hearing and notice of the hearing date, which he was entitled to receive under 45 U.S.C. § 153 First (j) and (x).[2]

---

1. Under 45 U.S.C. § 153 First (x), any division of the National Railroad Adjustment Board (NRAB) can establish regional boards of adjustment to carry on the work of the NRAB. Section 153 First (x) provides in relevant part:

Any division of the Adjustment Board shall have authority, in its discretion, to establish regional adjustment boards to act in its place and stead for such limited period as such division may determine to be necessary.... Any such regional board shall, during the time for which it is appointed, have the same authority to conduct hearings, make findings upon disputes and adopt the same procedure as the division of the Adjustment Board appointing it, and its decisions shall be enforceable to the same extent and under the same processes.

In this opinion any reference to the actions of the NRAB includes any relevant actions taken by a regional board of adjustment acting on behalf of the NRAB.

2. 45 U.S.C. § 153 First (j), made applicable to regional boards under § 153 First (x), provides:

(j) Parties may be heard either in person, by counsel, or by other representatives, as they may respectively elect, and the several divisions of the Adjustment Board shall give

Radin became concerned when almost four months passed without a response from the regional board, so he directed his retained counsel to inquire about the status of the appeal. Counsel inquired by letter dated July 12, 1982, and in return received a letter from the regional board on July 15, 1982, stating that the hearing was scheduled for that day. The regional board considered the appeal that day, despite Radin's absence and lack of due notice, and issued a decision on August 5, 1976, sustaining the dismissal.

Radin commenced this action on December 23, 1981, more than five years after the final decision at the highest level of the grievance mechanism contained in the collective bargaining agreement. His theory was that the regional board's failure to give him notice and an opportunity to be heard deprived him of his fifth amendment right to due process. He joined the National Mediation Board, as the federal agency that oversees regional boards, and the United States, as the ultimate overseer of its own agencies, as the defendants allegedly responsible for this deprivation of a constitutional right. Radin requested various forms of redress, including injunctive and declaratory relief, monetary damages, reinstatement, costs and attorneys fees, and a writ of mandamus compelling defendants to grant him a new hearing.

On a motion by defendants, the district court dismissed the suit against the United States because of the bar of sovereign immunity. The court also dismissed the suit against the National Mediation Board, holding that the Board's status as the parent agency of the regional board of adjustment was an insufficient basis for making the Board a defendant in this action. Radin challenges both rulings by the trial court.

II

Radin was employed by a railway carrier and was therefore subject to the grievance procedures provided by the Railway Labor Act, 45 U.S.C. §§ 151–188.[3] Section 153 First (i) of the Act provides that minor disputes, growing out of grievances or contract interpretation, that cannot be resolved by intra-company negotiation under the collective bargaining agreement shall be referred to the National Railroad Adjustment Board (NRAB), or one of its regional boards, for arbitration.[4] The provision for arbitration is not a voluntary undertaking, but rather is compelled by the Act; a discharge grievance is a minor dispute that must be referred to the NRAB for arbitration, and this is the exclusive means by which a railroad employee can directly challenge the validity of his discharge. *Andrews v. Louisville & Nashville R.R.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972).[5] The award of the NRAB is final

due notice of all hearings to the employee or employees and the carrier or carriers involved in any disputes submitted to them.

3. 45 U.S.C. § 152 sets forth specific requirements for "carriers, their officers, agents, and employees," to follow in conducting their labor relations, and these requirements are further expanded throughout the other sections of the Railway Labor Act. Section 151 First defines "carrier" as any "carrier by railroad, subject to the Interstate Commerce Act," and there is no dispute that Radin was an employee of such a carrier (Penn Central).

4. 45 U.S.C. § 153 First (i) provides:
    The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on June 21, 1934, shall be handled in the

usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes.

5. In *Andrews* the specific question presented was whether a discharged railroad employee had to exhaust his administrative remedy of NRAB arbitration before commencing a civil action for wrongful discharge. The Court noted that "exhaustion of remedies" is a misnomer because the federal administrative remedy is exclusive and does not allow post-exhaustion actions in another forum:
    The term "exhaustion of administrative remedies" in its broader sense may be an entirely appropriate description of the obliga-

and binding, § 153 First (m), but is subject to review in the district court if an employee or carrier is "aggrieved by the failure of ... the Adjustment Board to make an award ... or is aggrieved by any of the terms of an award or by the failure ... to include certain terms in such award...." Section 153 First (q). The party seeking review of an award must file the action within two years after the cause of action accrues under the award of the NRAB. Section 153 First (r).

Radin's most obvious course of action, had he proceeded promptly and in the usual manner, would have been to follow the above procedure in seeking review of the arbitration award upholding his discharge. A regional board of adjustment, acting on behalf of the NRAB pursuant to § 153 First (x), allegedly denied him statutorily mandated due process rights in sustaining his dismissal, and such procedural deprivation by the arbitrators is ground for relief in the district court. Section 153 First (q) specifically provides that the district court can set aside an order "for failure of the [NRAB] to comply with the requirements of this chapter," and that is the basis of Radin's complaint. *See also Sheehan v. Union Pac. R.R.,* 576 F.2d 854 (10th Cir.1978) (deprivation of due process by NRAB in rendering award requires that a new arbitration be conducted).

Unfortunately, Radin did not commence any legal action concerning his discharge until more than five years had passed.[6]

Time-barred from seeking review of the initial award against him, he attempted the novel approach of suing both the United States and the National Mediation Board directly under a favorable statute of limitations.[7] We discuss the actions against these parties separately.

A.

Alleging general federal question jurisdiction under 28 U.S.C. § 1331, Radin attempted to hold the United States liable for the actions of the regional board of adjustment on a theory of respondeat superior. Radin's theory derives from *Bivens v. Six Unknown Federal Bureau of Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), where the Supreme Court held that federal officers were subject to personal liability for deprivations of an individual's fourth amendment rights. *Bivens* was extended to deprivations of fifth amendment due process rights in *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). Radin argues that if a federal officer can be held liable for a fifth amendment deprivation, the United States is likewise liable for fifth amendment deprivations by federal agencies. This theory, a quantum leap from the rationale of *Bivens* and *Davis,* fails to clear the hurdle of sovereign immunity.

▇▇▇ It is well settled that the United States, as sovereign, is absolutely immune from suit except as Congress specifically

---

tion of both the employee and carrier under the Railway Labor Act to resort to dispute settlement procedures provided by that Act. It is clear, however, that in at least some situations the Act makes the federal administrative remedy exclusive, rather than merely requiring exhaustion of remedies in one forum before resorting to another. A party who has litigated an issue before the Adjustment Board on the merits may not relitigate that issue in an independent judicial proceeding. *Union Pacific R. Co. v. Price,* 360 U.S. 601, 79 S.Ct. 1351, 3 L.Ed.2d 1460 (1959). He is limited to the judicial review of the Board's proceedings that the Act itself provides. *Gunther v. San Diego & A.E.R. Co.,* 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965). In such a case the proceedings afforded by 45

U.S.C. § 153 First (i), will be the only remedy available to the aggrieved party. *Andrews,* 406 U.S. at 325, 92 S.Ct. at 1565.

6. The record indicates that Radin obtained counsel to challenge the award through appropriate channels within the two year limit. A complaint was drafted, but counsel failed to file the complaint. Radin has tried to find this lawyer in order to press a malpractice claim, but his efforts have been unavailing.

7. Seeking a favorable limitation period for this action, Radin invokes 28 U.S.C. § 2401(a), which states in pertinent part that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action accrues."

provides, and any waivers of immunity are to be strictly construed. *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). Unless Congress has consented to a cause of action against the United States, there is no jurisdiction in any court of the land to entertain such suits. *United States v. Sherwood,* 312 U.S. 584, 587–88, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941). Congress has not seen fit to provide the cause of action Radin seeks here.[8] *Bivens* and *Davis,* which held that sovereign immunity does not shield *federal officers* in their *individual* capacity from liability for violation of an individual's constitutional rights, did not waive the sovereign immunity of the United States.[9] This court, in addressing a similar question in *Norton v. United States,* 581 F.2d 390, 393 (4th Cir. 1978), stated:

While *Bivens* created a federal tort for certain violations of the Fourth Amendment, it did not (and indeed could not) impose liability on the officer's employer, the federal government. The federal fisc was protected by the traditional doctrine of sovereign immunity.

*See also Jaffee v. United States,* 592 F.2d 712, 719 (3d Cir.1979). We therefore affirm the district court's ruling that the claim against the United States is barred by sovereign immunity.

### B.

We are also unpersuaded by Radin's claim that the National Mediation Board (Board) is a proper party to this action. Initially, any claim for monetary relief against the Board would have to be paid with public funds, thereby making the United States the real party in interest. The claim for damages against this federal agency is barred by sovereign immunity unless Congress has expressly or impliedly consented to suit, *see Blackmar v. Guerre,* 342 U.S. 512, 515, 72 S.Ct. 410, 411, 96 L.Ed. 534 (1952), and we are unaware of any such consent.

We conclude further that no claim is stated against the Board regardless of the nature of the relief sought. Radin's claims against the Board are premised on the status of the Board as the parent agency of the NRAB and the regional boards of adjustment, but this nexus is too tenuous a basis for holding the Board liable for the acts of those other agencies. The Board's relationship to the NRAB is very limited and does not trench upon the substantive responsibilities of the NRAB. The most important link between the two bodies is that the Board holds the pursestrings for expenditures by the NRAB and its regional boards. § 154 Third. The Board is also authorized to make certain appointments to the NRAB, to settle disputes concerning

**8.** Although the point is not addressed by either party, we recognize that Congress has authorized a broad waiver of sovereign immunity in the Tucker Act, 28 U.S.C. §§ 1491, 1346(a)(2). That Act gives jurisdiction to the Court of Claims (with concurrent jurisdiction in the district court if the claim does not exceed $10,000) to "render judgment upon any claim against the United States founded . . . upon the Constitution . . . ." This broad waiver does not expose the United States to liability for Radin's claim, because the Tucker Act is jurisdictional only and does not create any substantive cause of action against the United States for money damages. *United States v. Testan,* 424 U.S. 392, 399, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976). Radin could only recover under the Tucker Act if he could demonstrate that the constitutional provision he invokes "can fairly be interpreted as mandating compensation by the federal government for the damage sustained," *id.* at 400, 96 S.Ct. at 954 (quoting *Eastport Steamship Corp. v. United States,* 372

F.2d 1002, 1009, 178 Ct.Cl. 599 (1967)); it is well settled that there is no Tucker Act jurisdiction over a claim founded solely on a fifth amendment procedural due process claim, because "[t]he Due Process Clause simply cannot be read to mandate money damages be paid." *Alabama Hospital Ass'n v. United States,* 656 F.2d 606, 609 (Ct.Cl.1981). *See also Gordon v. United States,* 649 F.2d 837, 838 n. 2 (Ct.Cl. 1981); *Carruth v. United States,* 627 F.2d 1068, 1081 (Ct.Cl.1980).

**9.** Radin mistakenly claims that the causes of action in *Bivens* and *Davis* were based on 28 U.S.C. § 1331, which must therefore be a waiver of sovereign immunity. The claims in *Bivens* and *Davis* were based on specific constitutional provisions and not on § 1331, which is merely a jurisdictional grant that in no way affects the sovereign immunity of the United States.

labor organizations' representation on the NRAB, and to select referees and arbitrators in certain situations. *See, e.g.,* §§ 153 First (e), (f), (*l*), 153 Second, 157.

In their substantive areas of operation, however, the two bodies are totally separate and distinct. The NRAB has exclusive and mandatory jurisdiction to adjudicate minor disputes, including discharge grievances, and the Board has no power to review the work of the NRAB. Rather, review of NRAB awards is in the appropriate district court. Conversely, the Board has no adjudicatory power, but is limited to investigation and mediation of voluntarily submitted major disputes concerning changes in "rates of pay, rules or working conditions not adjusted by the parties in conference" and "[a]ny other dispute not referable to the [NRAB]." § 155 First (a) & (b).

Because of the distinct and independent spheres occupied by the NRAB and the Board, the Board could not properly be held responsible for actions by the NRAB that the Board cannot review or control. Rather, the NRAB must answer for its own acts and omissions. A survey of the recent case law concerning the NRAB suggests that Radin's omission of that body as a party

defendant was not unintentional. The courts that have considered the issue have uniformly held that the NRAB and its components are not proper parties to an action challenging an award made under § 153.[10] *See, e.g., Skidmore v. Consolidated Rail Corp.,* 619 F.2d 157 (2d Cir.1979); *Sheehan v. Union Pac. R.R.,* 576 F.2d 854 (10th Cir. 1978); *Fong v. American Airlines,* 431 F.Supp. 1340 (N.D.Cal.1977); *System Federation No. 30 v. Braidwood,* 284 F.Supp. 607 (N.D.Ill.1968).[11]

These courts have reasoned that the NRAB is an improper defendant in suits challenging an award because of its role as an impartial adjudicatory tribunal. The NRAB does not formulate policy or enforce laws, but acts as a specialized arbitrator to adjust minor disputes between regulated carriers and their employees. An arbitration tribunal, much like a trial court, is not properly a party to an action challenging the validity of its decision.[12] An appellate court reviews the judgment of a trial court; similarly, a district court under § 153 First (q) reviews the award of the NRAB, with the same parties in the district court that initiated the arbitration.

**10.** In order to avoid the cases finding the NRAB an improper defendant, Radin asserts that he is not challenging an award of the NRAB under § 153 First (q); rather, he makes a collateral attack based on constitutional deprivations occurring in the rendering of the award. This theory is without substance. The basis of Radin's complaint is that the NRAB did not follow statutory procedures and so rendered an invalid award. Section 153 First (q) specifically provide for the district court's vacating awards that were not made in accordance with the statutory procedure. Radin's claim can only be viewed as a challenge to the validity of the award rendered against him.

**11.** There are several older cases stating that the NRAB is a proper and necessary party to independent civil actions reviewing an award of the NRAB. *See, e.g., Finlin v. Pennsylvania R.R.,* 288 F.2d 826 (3d Cir.1961); *Morrissette v. Chicago, Burlington and Quincy R.R.,* 299 F.2d 502 (7th Cir.1961). At the time these cases were decided, there was no statutory procedure for obtaining a record for review or informing the NRAB of the challenge, and the civil action was the only means to seek adequate review of NRAB awards. The NRAB was deemed a nec-

essary party because without it the court would have neither a reviewable record nor the power to review an award without the record. *See Fong,* 431 F.Supp. at 1342. These problems have been alleviated by the 1966 amendments to the Railway Labor Act, which provide for full judicial review of the award and require the NRAB to file a full record of its proceedings into the district court as the basis for the review. *See* § 153 First (q). Since these amendments to the Act, the NRAB has not been an appropriate party to any actions to review the award.

**12.** The general rule in arbitration cases is that arbitrators are not personally answerable for their actions in resolving disputes, but their awards are reviewable for issues such as fraud or lack of jurisdiction. If the rule were otherwise, the integrity and stability of the arbitral process would be jeopardized by requiring arbitrators to acquit themselves in a reviewing court. Section 153 First (q) affords complete review of awards without impugning the independence of the NRAB. *See Fong,* 431 F.Supp. at 1343–44.

This reasoning, quite persuasive in holding the NRAB an improper defendant, is even more compelling when liability is urged against the Board for the procedural derelictions of the NRAB. The Board has no connection with or control over the adjudicatory functions of the NRAB, which are accorded adequate review in the district courts and further review in the courts of appeals.[13] Radin should have utilized the statutory apparatus to seek review of the award against him, and his failure to do so cannot be circumvented by invoking the relationship between the Board and the NRAB as the basis for liability.

### III

We hold that the action against the United States was properly dismissed as barred by sovereign immunity, and further that the National Mediation Board was correctly dismissed as a party because it is never a proper defendant in an action to challenge an NRAB award. The Railway Labor Act embodies a scheme that requires minor grievances to be resolved by final and binding NRAB arbitration, subject only to limited review in the district courts. Section 153 First (q) of the Act specifically provides that NRAB awards can be set aside for the procedural irregularities Radin complains of in this case. The Supreme Court in *Andrews v. Louisville & Nashville R. Co.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972) has held that the statutorily mandated arbitration of minor disputes is the exclusive means for a railroad employee to directly challenge his discharge. The language in *Andrews* and the comprehensive congressional scheme of impartial agency arbitration coupled with judicial review convince us that the attempted collateral attack[14] against the Board phrased in terms of constitutional deprivation is not a viable means of challenging NRAB action. Rather, a discharged employee is relegated exclusively to the arbitral process and its attendant judicial review.

AFFIRMED.

---

**13.** The judicial review provisions of the Administrative Procedure Act, 5 U.S.C. §§ 701–706, may provide review of Board action in suits that allege jurisdiction under 28 U.S.C. § 1331. Although it is not completely settled whether § 702 of the APA is a waiver of sovereign immunity in actions alleging § 1331 jurisdiction that seek review of agency action, *compare Watson v. Blumenthal*, 586 F.2d 925, 932 (2d Cir.1978) (§ 702 did not remove defense of sovereign immunity in § 1331 actions), *with Rowe v. United States*, 633 F.2d 799, 801 (9th Cir.1980) (APA provides for waiver of sovereign immunity in actions for relief other than monetary damages), the weight of authority recognizes that § 702 has waived sovereign immunity in these cases. K. Davis, *Administrative Law* §§ 27.00–27.10 (1982 Supp.). In this case, however, the Board has not committed any "agency action" within the meaning of § 702, so this avenue of relief is not open to Radin.

Section 702 also provides that suits seeking review of "agency action" can be brought against the United States as the named defendant, but this will not allow Radin to prevail in this case on the basis of the omissions of the NRAB. Although the NRAB is the only body that has taken "action" within the meaning of § 702, the NRAB is not an "agency" within the meaning of that section. The NRAB is an authority of the government that is excluded under § 701(b)(1)(E) from APA-mandated judicial review because it is an agency composed of representatives of the parties or organizations of the parties. *See also Barnett v. Pennsylvania-Reading Seashore Lines*, 245 F.2d 579 (3d Cir.1957) (APA judicial review provisions inapplicable to the NRAB). Furthermore, § 702 is limited to review of non-monetary claims, and Radin here seeks damages and back-pay. Finally, § 703 would bar collateral judicial review of NRAB awards, because that section provides that the appropriate form of review is the "special statutory review proceeding relevant to the subject matter in a court specified by statute"; that form of direct review of NRAB awards is provided by 45 U.S.C. § 153 First (q).

**14.** There is a line of cases that espouses a general rule that when the NRAB "violates an employee's constitutional rights by affording him less than due process, the employee may collaterally attack the award of the Board in an appropriate federal district court." *Edwards v. St. Louis-San Francisco R.R.*, 361 F.2d 946, 953 (7th Cir.1966) (citing cases). These cases arose before the 1966 amendments in § 153 First (q) that provide for full and direct judicial review of NRAB, and are no longer persuasive. See note 11, *supra*. Also, these cases permitted the district court to review an award for procedural defects and vacate the award if defects existed. By contrast, Radin seeks damages and other relief not countenanced by these older cases.