Sandra J. THEARD, Plaintiff,

v.

The UNITED STATES
ARMY, Defendant.

Civ. No. C–86–369–G.

United States District Court,
M.D. North Carolina,
Greensboro Division.

Jan. 15, 1987.

Sandra J. Theard, pro se.

Robert H. Edmunds, Jr., Greensboro, N.C., U.S. Atty. and Major William S. Trivette, Office of the Judge Advocate General, Dept. of the Army, Washington, D.C., for defendant.

## MEMORANDUM OPINION

GORDON, Senior District Judge:

Defendant, United States Army, moves to dismiss or in the alternative to grant summary judgment on employment-related claims brought by pro se plaintiff, Sandra J. Theard. Plaintiff claims that the Army retaliatorily discharged her from her position as an army Kitchen Police (KP) worker on account of her complaints to army officials about waste, favoritism, deception, and discrimination allegedly practiced by the KP management. Plaintiff also claims that she was discriminatorily discharged and denied promotions on account of her

race and sex. Finally, plaintiff claims that she was denied procedural due process when the Army revoked her "dependency status".

The Army contends that dismissal is proper as to plaintiff's employment discrimination claims on account of plaintiff's alleged failure to timely exhaust her administrative remedies. In the alternative, the Army contends that summary judgment is proper as to all such claims except discriminatory denial of promotions. The Army also contends that plaintiff's claim of retaliation due to whistleblowing should be dismissed for a lack of jurisdiction, as this claim is allegedly within the exclusive province of the Office of Special Counsel (OSC) for the Merit Systems Protection Board (MSPB). Finally, the Army invokes its sovereign immunity and thereby moves for dismissal of plaintiff's procedural due process claim.

To the extent that plaintiff attempts to state a retaliation claim under the Civil Service Reform Act (CSRA), the court dismisses such claim for lack of jurisdiction. The court grants summary judgment on plaintiff's Title VII claims of retaliatory and discriminatory discharge, finding no genuine issue remaining as to whether defendant would have discharged plaintiff "but for" her whistleblowing and her status as a black female. The court dismisses plaintiff's due process claim pursuant to (1) defendant's sovereign immunity and (2) the absence on the part of plaintiff of any entitlement to continued employment. Plaintiff's remaining claim—that she was denied promotions on account of her sex and race—will be rejected for a failure to timely exhaust administrative remedies unless she demonstrates at a full-scale evidentiary hearing to be scheduled by the court that the court should extend the 30 day period (29 CFR § 1613.214(a)(1)(i) (1986)) for consulting a Equal Employment Opportunity (EEO) Counselor. Extension of the 30 day period is arguably proper pursuant to 29 CFR § 1613.214(a)(4) (1986), based on the Army's alleged failure to notify plaintiff of her duty to timely consult an EEO Counselor.

## FACTS

Plaintiff, a black female married to a soldier, received a position as a KP worker with the United States Army in Kitzingen, Germany, on 12 June 1981. As a "dependent" of an army soldier, plaintiff was given an "excepted service appointment", meaning she did not receive her job through a competitive entrance system, but instead was given the job pursuant to the Army's Dependents Employment Policy.[1] Under this policy, the Army provides family members of soldiers stationed overseas with an opportunity to work when language would be a barrier to host-country employment.

On 2 June 1982, approximately one year after starting her job as a KP worker, plaintiff signed a group grievance letter prepared by a KP Communication Committee and sent to army officials. The purpose of the letter was "to inform individuals ... of the unsatisfactory and unstable working environment" to which KP workers were allegedly subjected. The letter listed "some of the abuses and irregularities" as, among other things, favoritism, slander, unfair hiring practices, deception, mismanagement, and "discrimination (nonracial)." The letter stated that "some of these conditions" were "overt and blatant violations of the principles and policies contained in [regulations] ... that apply to Race Relations and *Equal Opportunity.*" Finally, the letter contained the KP group's requested remedy: "a comprehensive *plan of action* to alleviate these problems and conditions, thereby creating a more improved work environment." As specific examples of the allegedly unfair practices occurring during 1982, plaintiff now contends that she applied for and was denied a promotion to KP Leader on at least five occasions, and that she was transferred to a different KP facility for writing the KP supervisor a letter explaining that the KP leader "was not doing her job."

---

1. AR 690–366, 301.6, 6–1 et seq (15 Oct. 1979). Cited in case file at # 6, exhibit 2.

Robert Poindexter, an EEO staff member, made an informal inquiry into the KP workers' allegations of unfair treatment. Upon completing this inquiry, Poindexter recommended that the KP supervisor either be removed or provided with the "training that would better equip him to effectively supervise large groups of employees" and that plaintiff be restored "to her previous position and location." Affidavit of Robert Poindexter (Case File # 13). Poindexter admits that he did not inform plaintiff about the EEO filing requirements, but explains that he "was not acting, in this case, in an EEO capacity." Ms. Judge, another EEO official aware of the KP workers' grievance, also allegedly failed to apprise plaintiff of the EEO filing requirements.

The workplace was not the only context in which plaintiff had difficulties during 1982; her marriage was severely deteriorating. Her husband, Michael Theard, was allegedly having an extra-marital relationship and ceased living with plaintiff on or about 28 October 1982. On 10 February 1983, Mr. Theard formally requested that the Army revoke plaintiff's dependency status, terminate her employment, and send her and their child back to the United States. Mr. Theard listed, among other things, marital difficulties leading to their physical separation as the explanation for this request.

Fritz Friedal, Employment Relations Specialist assigned to the Kitzingen Civilian Personnel Office, terminated plaintiff's employment on 25 February 1983, citing regulations that require the Army to revoke an employee's dependency status upon "occupancy of separated living quarters from those of the sponsor" and to terminate employment within 60 days thereafter.[2] Mr. Friedal unequivocally denies that his decision was in any way motivated by a desire either to retaliate against plaintiff because of "any complaint she had ever made concerning the working conditions at the Kitzingen Dining Facilities," or to discriminate against plaintiff on account of

her sex and race. Affidavit of Fritz Friedal (Case File # 6, exhibit 5). Plaintiff subsequently returned to the United States in March 1983.

While at least two EEO officials were aware in 1982 of the KP workers' grievance, plaintiff did not personally present a discrimination complaint to an EEO Counselor until 26 July 1984. Plaintiff then brought the following claims to the attention of the counselor: (1) discriminatory termination of employment and denial of promotions on account of her race and sex and (2) retaliatory discharge on account of her whistleblowing to army officials concerning the allegedly unfair work conditions created by the KP management. On 17 September 1984, the Army EEO Office rejected plaintiff's discrimination claims as untimely. The Army based its decision on plaintiff's failure to contact an EEO Counselor within 30 days after any alleged discrimination, as required by 29 CFR 1613.-214(a)(1)(i). The Army refused to extend the time limit despite plaintiff's contention that, under 29 CFR 1613.214(a)(4), the Army's alleged failure to notify her of the EEO filing procedures required such an extension. The Army also rejected plaintiff's retaliation claim, concluding that such a claim does not fall "within the purview of the Equal Opportunity Complaint regulations." Case File # 12, pp. 13, 16. On 21 March 1986, the EEOC concurred with the Army's decision in its entirety. Plaintiff, pro se, filed a suit in federal district court on 4 April 1986. She amended her complaint on 14 November 1986 to include a claim that the Army violated her due process rights by revoking her dependency without affording her sufficient procedural protections.

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S TITLE VII CLAIMS FOR A FAILURE TO EXHAUST AVAILABLE ADMINISTRATIVE REMEDIES

 The exclusive remedy for federal employment discrimination is Title VII of

---

2. Appendix C—Employment of Dependents, USAREUR Suppl 1 to DA CPR 300/302–C, 5C–

5b. Cited in case file at # 6, exhibit 3.

the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16(c), and plaintiff must comply with its administrative exhaustion requirements as a precondition of her suit. *Brown v. General Services Admin.*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). A failure to exhaust, however, is not a jurisdictional defect; the exhaustion requirements are instead subject to equitable tolling and estoppel. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). The exhaustion requirements are also subject to any regulatory overrides. *See Henderson v. United States Veterans Admin.*, 790 F.2d 436 (5th Cir.1986) ("EEOC has the authority to enforce the statute [Title VII] and to issue those regulations needed to implement the statute").

Defendant contends that plaintiff's failure to consult with an EEO Counselor within 30 days after the alleged discrimination, as required by 29 CFR § 1613.214(a)(1)(i), precludes plaintiff's suit in district court. Plaintiff counters with three assertions: (1) plaintiff did in fact comply with the 30 day rule because at least two EEO officials were aware of her grievance within the requisite 30 day period; (2) the Army is equitably estopped from asserting the 30 day rule on account of its alleged "affirmative misconduct"; and (3) the 30 day period should be extended pursuant to 29 CFR § 1613.214(a)(4) in that the Army allegedly failed to notify her of the EEO filing requirements.

*(1) Compliance with the 30 Day Rule*

29 CFR § 1613.214(a)(1)(i) provides as follows:

> the agency may accept the [employment discrimination] complaint for processing ... only if ... complainant brought to the attention of the Equal Employment Opportunity Counselor the matter causing him to believe he had been discriminated against within 30 calendar days of the date of that matter....

In the instant case, the alleged discrimination arguably occurred about or before 2 June 1982, the date of the group grievance letter. Even assuming, as plaintiff contends, that the discrimination was ongoing until 18 February 1983, plaintiff did not personally present a discrimination complaint to an EEO Counselor until 26 July 1984, well after the requisite 30 day period. Plaintiff, however, contends that since Mr. Poindexter and Ms. Judge, both EEO officials, were aware of the group grievance letter within the requisite 30 days, she thereby complied with the 30 day rule. The court disagrees.

■ To satisfy the 30 day rule, an employee must establish that sufficient facts were brought to the attention of an EEO Counselor such that the counselor should have reasonably concluded that the employee was seeking to resolve, through EEO channels, an allegation of discrimination. The underlying purpose of this rule is to encourage an aggrieved person to *"consult with [a] ... Counselor to try to resolve the matter."* 29 CFR § 1613.213(a) (emphasis added). But, for there to be any chance of a resolution through informal counseling, the employee must first personally present a discrimination complaint to a counselor. *Perel v. Health Care Financing Admin.*, 804 F.2d 678 (table) slip op. at 3 (4th Cir. 1986). A counselor's mere awareness of a generalized group employment grievance does not satisfy the rule, particularly when the grievance primarily focused on employment conditions that do not implicate Title VII. Otherwise, any employment grievance making an oblique reference to discrimination, of which a counselor happens to become aware, would satisfy the 30 day rule, yet without accomplishing the rule's intended purpose of informally and promptly resolving the dispute.

■ The court concludes that in the instant case the information conveyed to the EEO officers regarding the group KP grievance would not have reasonably created the impression that resolution of a discrimination complaint was being sought through EEO channels. Mr. Poindexter and Ms. Judge were not personally contacted by plaintiff with an individualized discrimination complaint; they were merely

aware of a generalized group grievance which made reference to discrimination, but which primarily focused on more generic employment problems. The grievance letter did not single out or specifically refer to plaintiff's individualized grievance. Furthermore, Mr. Poindexter and Ms. Judge, while both EEO officials, were not EEO *Counselors*, as required by the language of the regulation. *See Zografov v. V.A. Medical Center*, 779 F.2d 967, 969 (4th Cir. 1985). Accordingly, the court concludes that plaintiff did not satisfy the requirements of the 30 day rule.

### (2) Equitable Estoppel

■ Equitable estoppel is applicable only where a plaintiff establishes "affirmative misconduct on the part of the government." *Zografov v. V.A. Medical Center*, 779 F.2d 967, 969 (4th Cir.1985). Ms. Theard contends that the EEO officials' alleged failure to inform her of the 30 day rule constitutes such "affirmative misconduct" and thereby estops the Army from asserting the 30 day rule. The court disagrees.

On facts similar to the instant case, the Fourth Circuit has held that estoppel is inapplicable. In *Zografov*, the plaintiff claimed that he was unaware of the 30 day rule and "that he was effectively misled by the various EEO officers concerning discrimination complaint procedure." 779 F.2d at 969. There was nothing in the record, however, "to show that plaintiff told the officer[s] that he wanted to present a discrimination complaint." *Id.* at 970. On these facts, the court stated that plaintiff made "no showing of affirmative misconduct on the part government, which is the least the court would require, even if that would suffice, to rely on estoppel." *Id.* at 969. Ms. Theard contends that the EEO officials' failure to notify her of the filing requirements, even though she did not personally contact them with an individualized discrimination complaint, amounts to *affirmative* misconduct—a position unequivocally rejected by *Zografov*. Any failure to act on the part of the EEO officers was at most a *passive* misdeed. Plaintiff

has thus failed to demonstrate affirmative misconduct, and accordingly her estoppel argument fails.

### (3) Extension of the 30 Day Rule pursuant to 29 CFR § 1613.214(a)(4)

■ 29 CFR § 1613.214(a)(4), hereafter "section (a)(4)", provides that the "agency shall extend the time limits ... [w]hen the complainant shows that he was not notified of the time limits and was not otherwise aware of them...." Based on section (a)(4), plaintiff contends that the 30 day period should be extended in that her failure to consult an EEO counselor within the requisite 30 days was due to the Army's failure to notify her of the EEO filing requirements. Both the Army EEO Office and the EEOC summarily rejected application of section (a)(4). This court has de novo review of the EEOC's decision. *Ettinger v. Johnson*, 556 F.2d 692, 693–94 (3rd Cir.1977). *See Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976) (de novo review in district court of Title VII claims brought by federal employees); *Rosenfeld v. Dept. of the Army*, 769 F.2d 237 (4th Cir.1985) (same).

The Army does not address whether section (a)(4) is applicable and instead contends that *Zografov* precludes any extension of the 30 day period. *Zografov* did not specifically interpret section (a)(4), nor has any other Fourth Circuit opinion. The court believes that *Zografov*, a decision on the application of common law estoppel to the 30 day rule, should not be read so broadly as to be interpretive of a regulation it did not address.

In addition, the philosophy behind the 30 day rule supports a broad application of section (a)(4). The 30 day rule is designed "to ensure initiation of counseling," with the hope of achieving an informal and prompt resolution. *Perel v. Health Care Financing Admin.*, 804 F.2d 678 (table) slip op. at 3–4 (4th Cir.1986). The rule only achieves its purpose of timely resolution if

employees are aware of the 30 day deadline. The EEOC realizes that adequate notice is necessary to a fair and effective regulatory scheme, as evidenced by the following regulation accompanying the 30 day rule:

> [t]o implement the program established under this subpart, an agency *shall* ... [p]ublicize to its employees and post permanently on official bulletin boards [among other things] ... [t]ime limits for contacting an Equal Employment Opportunity Counselor.

29 CFR § 1613.204(f)(4) (1986) (emphasis added).

Where employees have not been notified of the rule, section (a)(4) provides employees with an extension of the 30 day period and thereby ameliorates the harshness of this 30 day statute of limitations. As stated by one court, "the 30 day [rule] ... is not reasonable if agencies and courts do not liberally construe the (a)(4) exceptions." *Myles v. Schlesinger,* 436 F.Supp. 8, 18 (E.D.Penn.1977). *See also McGuinness v. U.S. Postal Service,* 744 F.2d 1318, 1321 (7th Cir.1984) (section (a)(4) gives the Postal Service "a very broad authority to overlook a failure to consult the service's EEO Counselor"); *Cooper v. Bell,* 628 F.2d 1208, 1213 (9th Cir.1980) (equitable tolling at the initial stage of the administrative process is consonant with the regulatory scheme); *Arrington v. Bailar,* 481 F.Supp. 50, 53 (S.D.Tex.1979) ("administrative regulations are not to be interpreted in an overly technical manner"); *Berry v. Pierce,* 98 F.R.D. 237, 250 (E.D.Tex.1983) (criticized 30 day rule as a "pointless and perilous slalom stretching between federal employees and the vindication of their statutory rights, and bestowing upon employees little

more than a plentiful opportunities to incur time bars").

The actual language of section (a)(4) provides further support for a broad application, commanding that the agency *shall* extend the time limits when section (a)(4) is applicable. Section (a)(4) extensions thus are not left to the mere discretion of an agency, but are mandatory.

The court hence rejects the position that section (a)(4) should be applied coextensively with common law estoppel, as such a position would be unduly restrictive of a regulation warranting broad application. Dismissal is nonetheless appropriate if plaintiff's allegations, taken as true, do not facially comply with section (a)(4)'s requirements. Section (a)(4) puts the burden on plaintiff to show that (1) she was not notified of the 30 day rule *and* (2) was not otherwise aware of the rule.

In evaluating whether plaintiff was notified of the 30 day rule, a court must determine whether the employer's notification "was reasonably geared" to inform plaintiff of the 30 day rule, such that the rule was or should have been apparent to an employee similarly situated to the plaintiff who had a reasonably prudent regard for his or her rights. *See Myles v. Schlesinger,* 436 F.Supp. 8, 17 (E.D.Penn.1977).[3] Factors relevant to the notification issue include, but are not limited to, the following: (1) letters to the employees informing them of EEO filing requirements; (2) EEO bulletins distributed to employees; (3) EEO procedures and time requirements conspicuously posted in the workplace; (4) conveniently located EEO offices and reference manuals; (5) EEO training programs designed to inform employees of the filing requirements; and (6) whether the employee has previously filed an EEO complaint.

**3.** The language of section (a)(4) can be interpreted either subjectively or objectively. The subjective approach equates notice to actual awareness, whereas the objective approach equates notice to the awareness of a hypothetical, reasonable person. The objective approach has prevailed because it encourages employers to exercise diligence in communicating the EEO filing requirements to employees and at the same time encourages employees to be aware of

the requirements and to initiate counseling in a timely manner. *See Wolfolk v. Rivera,* 729 F.2d 1114, 1117 (7th Cir.1984) (objective test is "an appropriate balance between fairness to the complainant and the importance of beginning the administrative process of investigation and conciliation in a timely manner"); *Fleischhaker v. Adams,* 481 F.Supp. 285, 292 (D.D.C.1979) (test is whether "knew or should have known of the time limitation").

*Id.* No one factor is dispositive and the court looks to totality of circumstances.

■ In the instant case, the notification issue creates an unresolved question of material fact. Plaintiff has submitted evidence that she was not reasonably notified of the 30 day rule, and the Army has submitted little, if any, evidence to the contrary. Dismissal and summary judgment [4] are therefore improper, and the court orders that a full-scale evidentiary hearing be scheduled solely to determine whether plaintiff falls within section (a)(4). *Oaxaca v. Roscoe,* 641 F.2d 386, 392 (5th Cir.1981) (if there remain genuine disputes of material fact, timeliness of filing under section (a)(4) can be resolved only after an evidentiary hearing).

An evidentiary hearing is also needed to determine whether plaintiff was actually aware of, as opposed to objectively notified of, the 30 day rule, for the section (a)(4) extension applies only when an employee is not notified *and* "not otherwise aware" of the rule. Plaintiff's subjective awareness is a question of fact uniquely suited for a resolution in court, where her demeanor can be observed and her credibility assessed. As such, dismissal and summary judgment are inappropriate. *See Ettinger v. Johnson,* 556 F.2d 692, 697–98 (3rd Cir. 1977).

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S RETALIATORY DISCHARGE CLAIM

On 2 June 1982, plaintiff and other KP workers sent a written grievance to army officials charging the KP management with, among other things, mismanagement, favoritism, and discrimination. Plaintiff contends that on account of this whistle-blowing, the Army retaliatorily revoked her dependency status, thereby compelling the termination of her employment. The Army not only denies having retaliated against plaintiff, but also insists that any such retaliation, concededly a "prohibited personnel practice" violative of the Civil Service Reform Act (CSRA) (*see* 5 U.S.C. § 2302(b)(8)(A)), is reviewable only by the Office of Special Counsel (OSC) of the Merit Systems Protection Board (MSPB). Both the Army EEO Office and the EEOC rejected plaintiff's retaliation claim as not falling within the purview of EEOC regulations.

In evaluating defendant's motion to dismiss, the court must resolve two broad issues: (1) whether plaintiff, as a federal employee, is entitled to district court review of her Title VII retaliatory discharge claim, when the CSRA relegates review of retaliation claims to the OSC (*see* 5 U.S.C. §§ 2302(b)(8), 1206) and plaintiff's whistle-blowing, the alleged catalyst for any such retaliation, was partially directed at discriminatory conduct and practices; and (2) whether plaintiff, an "excepted service employee"[5] not qualifying as "preference eligible"[6], is entitled to a unified review by the district court of her Title VII and CSRA retaliation claims.

### (1) District Court Review of Plaintiff's Title VII Retaliation Claim

■ The CSRA relegates jurisdiction over retaliatory employment decisions to the OSC. Section 2302(b)(8)(A) of Title V categorizes retaliation as a "prohibited personnel action," and section 1206 of Title V gives the OSC jurisdiction over a "prohibited personnel action".[7] These sections do

---

4. The court is permitted to convert defendant's dismissal motion into a summary judgment motion and then give the parties an opportunity to determine whether a genuine issue of material fact is present for trial. *See Oaxaca v. Roscoe,* 641 F.2d 386, 391–92 (5th Cir.1981). In the instant case, however, the court is confident that a genuine issue of fact is present. To save time and expense the court concludes that it is prudent to bypass the summary judgment phase and instead hold a trial-like hearing on the (a)(4) issue.

5. *See* 5 U.S.C. § 2103(a) and 5 CFR §§ 302.101–302.501.

6. *See* 5 U.S.C. § 2108(3).

7. A plaintiff, however, who qualifies as an "employee" under 5 U.S.C. § 7511 and brings an action cognizable under 5 U.S.C. § 7512 (i.e., major employment decisions, such as a removal or a reduction in pay) is entitled to an appeal to the MSPB. *See* 5 U.S.C. § 7513(d).

not eliminate, however, any rights a federal employee has under 42 U.S.C. § 2000e–16 of Title VII (section 717 of the Civil Rights Act of 1964):

> [S]ection [2302] shall not be construed to extinguish or lessen ... any right or remedy available to any employee ... under ... 42 U.S.C. § 2000e–16....

5 U.S.C. § 2302(d)(1). *See Broadway v. Block,* 694 F.2d 979, 983 (5th Cir.1982) ("no express statutory provisions under the CSRA grant the reassigned federal employee a district court cause of action *absent a claim of discrimination*") (emphasis added); *Borrell v. U.S. Intern. Communications Agency,* 682 F.2d 981 (D.C.Cir.1982) ("Congress intended the CSRA to provide *additional,* not decreased, protection for federal employees who blow the whistle") (emphasis added).

42 U.S.C. § 2000e–16 contains the procedures and rights associated with a discrimination action brought by a federal employee. Curiously, this section does not specifically incorporate the Title VII provision (42 U.S.C. § 2000e–3) creating a reprisal action in district court for employees in the private sector. Case law, however, has filled the void: "[i]n enacting section 2000e–16 Congress intended to, and did incorporate into that section the provisions of the Civil Rights Act prohibiting harassment or retaliation...." *Ayon v. Sampson,* 547 F.2d 446, 450 (9th Cir.1976); *Smith v. Horner,* 635 F.Supp. 323, 326 n. 3 (D.D.C.1986). *See Sorrells v. Veterans Admin.,* 576 F.Supp. 1254, 1259 (S.D.Ohio 1983); *De Medina v. Reinhardt,* 444 F.Supp. 573, 580 (D.D.C. 1978). Accordingly, plaintiff's retaliation claim should not be dismissed for a lack of jurisdiction, provided that such claim has

the basic allegations so as to be actionable under the Title VII reprisal provision (42 U.S.C. § 2000e–3).

To state a claim of retaliation under Title VII, plaintiff must at least allege that the Army retaliated against her on account of her whistleblowing and that her whistleblowing was in opposition to conduct or practices violative of Title VII [8]. 42 U.S.C. § 2000e–3. Plaintiff obviously alleges that the Army retaliated against her on account of her whistleblowing, and the court also finds that her whistleblowing (i.e. the group grievance letter) was at least partially in opposition to practices and conduct allegedly repugnant to Title VII. The letter states that "some of these [employment] conditions, although not always racial or ethnic in their nature, are overt and blatant violations of the principles and policies that apply to Race Relations and *Equal Opportunity."* The letter also lists "discrimination (non-racial)" as one "of the abuses and irregularities that occur from day to day." Plaintiff's retaliation claim is therefore cognizable under Title VII.

### (2) Unified District Court Review of Both Plaintiff's Title VII and CSRA Retaliation Claims

Under 5 U.S.C. § 7702(a)(2) [9], a government employee is entitled to unified district court review of a Title VII discrimination claim combined with a CSRA claim, following an adverse agency decision, if two requirements are met: (1) the matter involves an issue of discrimination prohibited under 42 U.S.C. § 2000e–16 of Title VII [10] and (2) the employee had been affected by an action that he may appeal to the

---

**8.** "An underlying discrimination charge need not be meritorious for a plaintiff to prevail on a claim of retaliation...." *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 357 n. 1 (4th Cir.1985).

**9.** "Sections 7702 and 7703(b)(2) are designed to allocate review of discrimination claims among the MSPB, the Equal Employment Opportunity

Commission, and the Federal Courts." *Broadway v. Block,* 694 F.2d 979, 983 (5th Cir.1982).

**10.** Discrimination prohibited by other legislation also satisfies this requirement: (1) section 6(d) of the Fair Labor Standards Act of 1938 (29 U.S.C. § 206(d); (2) section 501 of the Rehabilitation Act of 1973 (29 U.S.C. § 791); or (3)

MSPB.[11] The court has already concluded that the alleged retaliation is cognizable under Title VII. To satisfy the second requirement, plaintiff must show (1) her claim is of the type appealable to the MSRA and (2) she was the type of employee, as defined by 5 U.S.C. § 7511, who has standing to bring a claim to the MSPB pursuant to 5 U.S.C. § 7513(d). Plaintiff's retaliatory discharge claim is certainly appealable to the MSPB[12]. The MSPB may review certain "adverse actions"[13] and removal from a position, among other things, is such an adverse action. *See Broadway v. Block*, 694 F.2d 979, 982 (5th Cir.1982). *See also* 5 U.S.C. §§ 7512, 7513(d), 4303(e). Plaintiff is not, however, the type of employee who has standing to bring a claim to the MSPB.

An "employee" for the purposes of Title V is any individual "who is ... appointed in the civil service by ... a member of a uniformed service...." 5 U.S.C. § 2105. Section 2105(a), however, limits the applicability of this broad definition to contexts in which the definition is not "specifically modified" and section 7511 modifies section 2105 as follows:

> (a) For the purpose of this subchapter [applicable to, inter alia, removals]—
>
> (1) employee means— ...
>
> (B) a *preference eligible* in an Executive agency *in the excepted service* who has completed 1 year of current service in the same or similar positions.

(emphasis added). The court finds for the foregoing reasons that plaintiff fails to satisfy section 2105's definition of an employee.

"[T]he 'excepted service' consists of those civil service positions which are not in the competitive service." 5 U.S.C. § 2103(a). Plaintiff received her KP position because she was married to soldier; she did not merit this position through a competitive entrance examination. Additionally, plaintiff's KP position is listed on her army employment record as an excepted service appointment and, indeed, both parties describe plaintiff's job as an excepted service position. Accordingly, the court concludes that plaintiff was in the "excepted service".

As an excepted service employee, plaintiff does not qualify as an "employee" for the purpose of acquiring MSBP appeal rights unless she (1) worked at her job uninterruptedly for over 1 year, which she did, and (2) qualified as "preference eligible", which she did not. *See* 5 U.S.C. §§ 7511(a), 7512, 7513(d). Preference eligibility, as a general rule, is given to army veterans or employees having a specified relation to a veteran. 5 U.S.C. § 2108(3). Plaintiff did not receive her KP position on account of any relation to a veteran; she was employed because of her marital relation to a soldier on active duty. Furthermore, plaintiff's army employment record unequivocally indicates that she did not qualify as preference eligible. Lacking preference eligibility, plaintiff did not qualify as an "employee" under section 7511 and, in turn, could not have appealed her retaliatory removal claim to the MSPB.

sections 12 and 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. §§ 631, 633a).

**11.** "Cases falling within section 7702 have been termed "mixed"—that is, discrimination mixed with an action appealable to the MSPB. *Williams v. Dept. of Army*, 715 F.2d 1485, 1487 n. 3 (Fed.Cir.1983).

**12.** The D.C.Circuit has attempted to define the administrative and judicial review structure for CSRA claims:

(1) for major personnel actions specified in the statute ("adverse actions"), direct judicial review after extensive prior administrative proceedings; (2) for specified minor personnel actions infected by particularly heinous

motivations or disregard of law ("prohibited personnel practices"), review by the Office of Special Counsel, with judicial scrutiny limited, at most, to insuring compliance with the statutory requirement that the OSC perform an adequate inquiry ...; and (3) for specified minor personnel actions not so infected, and for all other minor personnel actions, review by neither OSC nor the courts.

*Carducci v. Regan*, 714 F.2d 171 (D.C.Cir.1983).

**13.** The term "adverse action" no longer appears in the wording of the civil service statutes, but Chapter 75 of Title V, which defines the actions subject to review by the MSPB and the federal courts, is titled "Adverse Actions".

*See Williams v. Internal Revenue Service,* 745 F.2d 702, 704 (D.C.Cir.1984) (excepted service employee, not qualifying as preference eligible, could not avail himself to CSRA procedural rights). *See also, Chu v. United States,* 773 F.2d 1226 (Fed.Cir.1985) (an employee agency is free to discharge excepted service employee without cause); *Fowler v. United States,* 633 F.2d 1258, 1262 (8th Cir.1980) (same). As a result, plaintiff does not satisfy the requirements of section 7702(a)(2) for gaining unified review in the district court of her Title VII and CSRA claims. The bottom line is that while the court has jurisdiction over plaintiff's Title VII retaliation claim, the court does not have jurisdiction over plaintiff's CSRA retaliation claim.

In reaching this result, the court has deliberated over the plausible position that administrative and judicial economy are best served by providing a unified review of cases raising both Title VII and CSRA retaliation claims. The court's decision today requires an employee similarly situated to the plaintiff to divide at the administrative level two intertwined claims, taking the Title VII retaliation claim to an EEO Counselor (and thereafter to the EEOC and district court) and taking the CSRA retaliation claim to the OSC. The court is mindful of the "exhausting" complexities and procedural pitfalls already attending an employee's quest to seek redress of injurious illegality in the workplace. For this reason, the court is reluctant to make a decision that adds more complexity to the administrative process.

The court is also mindful of a decision that requires unified review at the judicial level of "mixed cases"—that is, discrimination mixed with an action appealable to the MSPB. *Williams v. Dept. of Army,* 715 F.2d 1485, 1487 n. 3 (Fed.Cir.1983). While appeals from the MSPB are usually proper only to the United States court of appeals (*see* 5 U.S.C. § 7703), *Williams* held that for reason of judicial economy, where a discrimination claim is mixed with a claim appealable to the MSPB, unified review in the district court was required. The court deemed a divided review between the dis-

trict court and the court of appeals impermissible. As pointed out in *Williams,* Congress intended mixed cases to be unifiedly reviewed at the *judicial* level. 715 F.2d at 1488. Arguably, this intent to unify cases extended to the *administrative* level, as evidenced by a letter from the Comptroller General to Congress:

> [a] clear distinction between an equal employment and merit principle complaint is difficult, if not impossible, and employees frequently perceive their problems to be both. We believe that placing the adjudication of these complaints in different organizations will invite duplicate or two track appeals on the same issues simultaneously, or sequentially, to EEOC and MSPB. In addition to wasting time, effort and money, this situation poses a very real potential for differing definitions of issues, inconsistent interpretations of laws, regulations and irreconcilable decisions.

H.R.Rep. No. 1403, 95th Cong., 2d Sess. 107 (1978); *Williams* at 1490 n. 4.

While hopeful that improvements can be made to simplify the administrative process, the court is not faced with the issue of whether *unified administrative review* is proper where a Title VII discrimination and CSRA non-discrimination claim are combined; rather, the issue before the court is whether the district court should grant an excepted service employee, not qualifying as preference eligible, *unified district court review.* Plaintiff does not ask this court to order the Army EEO Office, the EEO Counselor, or the EEOC, to entertain her CSRA claim. Plaintiff instead wants the district court to hear her CSRA claim, which the court declines to do.

Unlike *Williams,* in which the plaintiff had a right to federal court review of both claims and the only question was whether review should be unified or divided, the plaintiff in the instant case lacked any right whatsoever to appeal her CSRA claim to federal court. To enable plaintiff, by virtue of mixing a CSRA claim with a Title VII claim, to gain district court review of a CSRA claim otherwise relegated solely to

the OSC, would encourage employees to manufacture Title VII claims, thereby undermining judicial economy, and frustrate the remedial scheme of the CSRA. The statute precludes a non-preference eligible, excepted service employee from taking a merit principle complaint into federal court. The court will not contradict the this statute.

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON ALL OF PLAINTIFF'S TITLE VII CLAIMS EXCEPT DISCRIMINATORY DENIAL OF PROMOTIONS

To prevail on its summary judgment motion, defendant must demonstrate the absence of any genuine issue of material fact with respect to plaintiff's retaliation and discriminatory treatment claims. *See Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985). If defendant meets this burden, plaintiff can nonetheless defeat the summary judgment motion by producing "specific facts showing that there is a genuine issue for trial, rather than resting upon bald assertions of [her] ... pleadings." *Id.*

■ The sequence of proofs and burdens, as prescribed by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–805, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973), are the same for both plaintiff's retaliation and discriminatory treatment claims:

[t]he employee is initially required to establish a prima facie case ... by a preponderance of the evidence. Such a prima facie case consists of three elements: 1) the employee engaged in protected activity; 2) the employer took adverse employment action against the employee; and 3) a causal connection between the protected activity and the adverse action.... [T]he burden of establishing a prima facie case is not onerous.... Once a prima facie case had been presented, the employer then has the burden of producing a legitimate nondiscriminatory reason for the adverse ac-

tion.... Finally, if the employer produces a legitimate nondiscriminatory explanation, the employee bears the ultimate burden of proving retaliation [or discriminatory treatment] by demonstrating that the employer's proffered reason is pretextual.

*Ross*, 759 F.2d at 365. Without launching into a full-blown application of this sequence, the court credits the defendant as presenting a legitimate nondiscriminatory explanation for discharging plaintiff: the Army legitimately revoked her dependency status upon "occupancy of separate living quarter from those of her sponsor [her husband]", and thereafter terminated her employment pursuant to an army regulation requiring discharge from employment within 60 days following loss of dependency status. Appendix C—Employment of Dependents, USAREUR Suppl 1 to DA CPR 300/302-C, C–5b. It is thus incumbent upon the plaintiff to demonstrate that the Army's proffered explanation for discharging her is pretextual.

The Fourth Circuit uses a "but for" test to assess whether plaintiff has demonstrated that defendant's explanation is pretextual. *Id.* at 366; *Holmes v. Bevilacqua*, 794 F.2d 142, 146 (4th Cir.1986). The dispositive issue, therefore, is whether, after looking at the complaint, briefs, documents, and affidavits, a genuine question of fact remains with respect to the following inquiry: would plaintiff have been discharged from her KP position had she not been a black female or had she not engaged in whistleblowing.

The court finds beyond dispute that the Army would have discharged plaintiff, regardless of her whistleblowing and status as a black female. Plaintiff held a non-preference eligible, excepted service position[14] pursuant to the Army's Dependency Employment Policy (AR 690–366, 301.6, 6–1 et seq (15 Oct. 1979). The Army revoked plaintiff's dependency status pursuant to a mandatory regulatory provision: "[l]oss of dependency status *occurs* ... on occupancy

---

**14.** It is well-recognized that excepted service employees can be terminated at any time and

without cause. *Chu v. United States,* 773 F.2d 1226 (Fed.Cir.1985).

of separate living quarters from those of the sponsor." Appendix C—Employment of Dependents, USAREUR, Suppl 1 to DA CPR 300/302–C, C–5b. Noticeably, this provision does not say "may occur" or "in the discretion of the Army will occur"; the provision states that loss of dependency status "occurs" upon such separation. Inasmuch as both parties admit that plaintiff and her husband were separated, the Army was required to revoke plaintiff's dependency status.[15]

Once plaintiff's dependency status was revoked, the Army was required to terminate her employment: "[e]mployment of ... dependents ... must be terminated no later than 60 days following loss of dependency status." *Id.* Thus, because termination of plaintiff's employment was effectuated pursuant to mandatory provisions, defendant's nondiscriminatory explanation is sufficiently compelling such that plaintiff is unable to demonstrate a genuine issue of fact as to whether she would have been discharged but for her whistleblowing and her status as a black female. Accordingly, the court grants defendant's summary judgment on plaintiff's retaliatory and discriminatory discharge claims. Plaintiff's remaining Title VII claim for discriminatory denial of promotions is still viable.

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIM

On 14 November 1986, the court granted plaintiff's motion to amend her complaint to include a claim that defendant denied her due process under the Fifth Amendment by allegedly revoking her dependency status without affording her any procedural protections. Defendant invokes its sovereign immunity. Because the court finds that defendant is immune as a matter of law and, in the alternative, that plaintiff, as an excepted service employee, lacked any property interest in her job sufficient to invoke due process guarantees, plaintiff's due process claim should be, and same is hereby, dismissed.

### (1) Sovereign Immunity

"[T]he United States, as sovereign, is absolutely immune from suit except as Congress specifically provides, and any waivers of immunity are to be strictly construed. Unless Congress has consented to a cause of action against the United States, there is no jurisdiction in any court of the land to entertain such suits." *Radin v. United States,* 699 F.2d 681, 684–85 (4th Cir.1983). *See Library of Congress v. Shaw,* — U.S. —, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). The United States has not waived its immunity with respect to Fifth Amendment due process claims. *Rabin,* 699 F.2d at 685; *Clemente v. United States,* 766 F.2d 1358 (9th Cir.1985). In attempting to sidestep this broad grant of immunity, plaintiff contends that the United States is only in form the defendant. Plaintiff asserts that certain employees of the Army, named in a document attached to her original complaint, are in substance the true offenders and, consequently, immunity should not attach. In that plaintiff named the United States Army as the defendant and seeks, among other things, back pay and attorney fees, any compensation would have to be paid with public funds, thereby making the United States the real party in interest and triggering the government's immunity. *Stafford v. Briggs,* 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980) (in deciding whether an action is in reality against the government, the dispositive inquiry is who will pay the judgment); *Rabin,* 699 F.2d at 685 (due process claim for damages against National Mediation Board, a federal agency, barred by sovereign immunity because any monetary relief would be paid with public funds); *Clemente,* 766 F.2d 1363 (due pro-

---

**15.** Plaintiff has cited no authority for the proposition that this provision is to be applied in anything but a mandatory fashion. Additionally, plaintiff has not cited any instances wherein the Army itself has exercised discretion in implementing this provision, such as maintaining one's dependency status despite its awareness that such person was separated from his or her sponsor.

cess claim against the United States Air Force barred by sovereign immunity). *See Dugan v. Rank*, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963) (generally, a suit is considered one against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the government from acting, or compel it to act). Accordingly, inasmuch as the United States Army is the real party in interest, it is concluded that plaintiff's due process claim is barred by sovereign immunity.

### (2) Legitimate Claim of Entitlement

■ There is an alternative basis for dismissing plaintiff's due process claim: plaintiff did not have a "legitimated claim of entitlement" to continued employment, as is required to establish a property interest protected by the due process clause of the Fifth Amendment. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Carducci v. Regan*, 714 F.2d 171, 176 (D.C.Cir.1983). An "entitlement" is derived from statutes and regulations governing the terms of one's employment. *Board of Regents*, 408 U.S. at 577–78, 92 S.Ct. at 2709–10; *Carducci*, 714 F.2d at 176; *Fowler v. United States*, 633 F.2d 1258, 1262 (8th Cir.1980). As a non-preference eligible, excepted service employee, plaintiff did not even qualify as an "employee" under 5 U.S.C. § 7511, much less an employee who had a reasonable expectation of continued employment. "It is the well-recognized rule that federal employees in the excepted service can be terminated at any time, without either a statement of reasons for discharge or adverse action appeal rights." *Fowler*, 633 F.2d at 1262. Plaintiff, therefore, was not "entitled" to continued employment and thus lacked a constitutionally protected property interest in her job. Dismissal is therefore appropriate.

### CONCLUSION

The court dismisses plaintiff's CSRA retaliation claim for a lack of jurisdiction.

The court dismisses plaintiff's due process claim for two reasons: (1) absence of any entitlement to continued employment on the part of the plaintiff and (2) defendant's sovereign immunity. The court grants summary judgment on plaintiff's Title VII retaliatory and discriminatory discharge claims. Plaintiff's remaining claim is that she was discriminatorily denied promotions on account of her race and sex. The court will dismiss this claim for a failure to timely exhaust available administrative remedies unless plaintiff demonstrates the applicability of section (a)(4), the exception to the 30 day rule. The court therefore will schedule a full-scale evidentiary hearing *solely on the issue* of the applicability of section (a)(4) (i.e., 29 CFR 214(a)(4)). While plaintiff is formally pro se, the quality of the legal research and writing she has submitted suggests that an attorney is in the wings. Given the complexities attending the competent presentation of her case at the evidentiary hearing, the court encourages plaintiff to transform her phantom attorney into one of flesh and bones and to bring him or her to the hearing.

### ORDER

For the reasons set forth in a Memorandum Opinion entered contemporaneously herewith,

IT IS ORDERED that defendant's motion to dismiss plaintiff's Civil Service Reform Act claim be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendant's motion to dismiss plaintiff's due process claim be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendant's motions for summary judgment on plaintiff's Title VII retaliatory and discriminatory discharge claims be, and the same hereby are, GRANTED.

IT IS FURTHER ORDERED that an evidentiary hearing be scheduled on defendant's motion to dismiss plaintiff's claim that she was discriminatorily denied promotions on account of her race and sex. The hearing will be confined solely to the

issue of whether plaintiff falls within the rule of 29 CFR § 1613.214(a)(4). Otherwise, the hearing is similar to a trial. Live witness testimony is permissible and the parties shall submit trial briefs and proposed findings of fact and conclusions of law.